## WALTER GILLMAN V. THE STATE.

### No. 14917.   Delivered February 17, 1932.

The opinion states the case.

*Hart, Patterson & Hart* and *Hardy Hollers,* all of Austin, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is burglary; the punishment, confinement in the penitentiary for two years.

The state relied for a conviction solely upon evidence of possession by appellant of the fruits of the crime. The injured party, Roy L. Beaver, testified, in substance, as follows: On the evening before the smokehouse was entered he and his wife saw the meat. They cut a piece of bacon off of one of the sides about the size of his hand. Leaving the smokehouse, they latched the door. He knew they latched the door because it was their custom to close it when leaving the smokehouse.

The following morning the door was standing open. An investigation disclosed two hams, two shoulders and two sides of meat had been taken by someone. A week before the smokehoues was entered appellant had been at the home of the injured party. He recovered half of his meat the day after the burglary. At this point we quote the testimony of the witness as follows: "After I found this meat was missing I went to Mr. Pannell's and from there I went to the sheriff's office, and from the sheriff's office I went to Walter Gillman's (appellant's) house. At the house there I saw the two Gillman boys, Walter and Tom Gillman. This defendant here is one of the men I saw there. I went into the house, and in the house I saw one ham, one shoulder and one side of meat. That was my meat I saw hanging there in this house. * * * Walter Gillman was not in the house; he was about thirty feet in front of the house, out in the yard there. He was down at a charcoal kiln. I don't know if that charcoal kiln is about one hundred yards from that house, it was something like that but I didn't pay much attention. * * * He was out there about the charcoal kiln—they were burning charcoal. * * * The way I knew this meat I saw hanging up in this log cabin was my meat was because the evening before it was taken my wife cut a piece of bacon off of one of the middlings, or sides, about the size of your hand, and the meat we found had that same gap in the side where the piece had been removed from it. * * * This meat was the way I had cut it up, and it had been hanging up there in my smokehouse a month and a half and I had seen it every day for a month and a half, and just by the general appearance of it is the way I identified it."

The house in which the meat was found was a one-room log cabin. It was near the road, and unlocked. The meat was hanging in plain view. An officer testified that they went up to appellant's ranch, and that when he saw appellant out at the lime kiln he had a conversation with him. He said that after this conversation was concluded, they went to the cabin with appellant, where they found one ham, one side of bacon and one shoulder. Appellant did not testify. He introduced a witness who testified that he sold appellant a hog shortly before his arrest.

There was no disclaimer of guilt by appellant's brother, who was shown by the state's evidence to have been with appellant about one hundred yards from the log cabin at the time the injured party and the officer found the meat. There was no proof that appellant occupied the log cabin, other than the statement of the injured party that he and the officers went to appellant's house. If it should be assumed that appellant occupied the house, there was no proof that he was the only person who occupied it. As far as the record reflects the matter, the house might have been vacant, or it might have been occupied by several persons.

The possession of the meat alone having been relied upon, the state had the burden of showing the possession to have been personal, recent,

and unexplained, and that such possession involved a distinct and conscious assertion of property by appellant. Russell v. State, 86 Texas Crim. Rep., 609, 218 S. W., 1049, and authorities cited. In order to sustain a conviction upon circumstantial evidence, the circumstances must exclude every other reasonable hypothesis except that of the guilt of the accused. Reed v. State, 113 Texas Crim. Rep., 412, 22 S. W. (2d) 456, and authorities cited. With another present with appellant one hundred yards away from a log cabin in which the alleged stolen meat was found, and in the absence of a showing that appellant occupied or controlled this cabin, can it be said that the test of exclusion has been met. The opinion is expressed that the question must be answered in the negative. We quote from Branch's Annotated Penal Code, sec. 1877, as follows: "To sustain a conviction it should appear not only that an offense as charged has been committed, but there should also be proof to a degree of certainty greater than a mere probability or strong suspicion tending to establish that the party charged was the person who committed it or was a participant in its commission. There must be legal and competent evidence pertinently identifying the defendant with the transaction constituting the offense charged against him."

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.