# JANUARY 17, 1945

WOODROW WILSON BUFFORD v. THE STATE.

No. 22974. Delivered January 17, 1945.

The opinion states the case.

*Preston P. Mangum,* of Dallas, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

The appeal is from a conviction for robbery with a sentence of ten years in the penitentiary.

Wayne Alfred Wickliffe, a negro boy, worked in a parking station at the corner of Main and Harwood Streets, in the City of Dallas. Appellant had formerly worked in the same place with Wickliffe, who testified that on the night of November 17, 1943, appellant and another negro came to the place after midnight and wanted to borrow ten dollars, which the witness refused to lend him. Appellant and the other negro took their seat in a two-door four-passenger car, near the office, occupying the rear seat. The witness attended to the parking of cars that came in and, between times, would occupy the front seat of the same car with accused, in which there was a radio. It appears from the testimony of the witness that the accused several times solicited the loan of ten dollars. The witness parked his last car at four forty-five, as indicated by the registry clock on the last ticket made by him. At this time Wickliffe returned to the car, took his seat and turned on the radio. From this point we copy his evidence as follows:

"The defendant, Bufford, and this other negro were still there in the back seat of the automobile; and I did sit down in the car, and was listening to the radio.

"I do not remember what happened after that, no sir.

"The next thing that I remember was in the Parkland Hospital; I do not know what time of day or night it was.

"At this time I did have some physical injuries; they were on my head; I had a lot of them; a lot of bruises. I know where some of them were; one there (indicating), and here, and over here, and one back there (indicating). Several places, on my head, yes sir.

"This sunken place on my head I did not have that before this occurred; that was a result of the injuries I received at that time.

"After I came to and my money was checked, I was missing $43.00.

"I did not give Woodrow Wilson Bufford or anyone else my consent to take that money.

"I would not have let them have it if I had not received such injuries."

It will be seen that the State relied on circumstantial evidence for a conviction. The evidence does not show where the money was kept, or who took it. There is no evidence that the appellant had any money after the robbery. Although his presence there creates a suspicious circumstance against him, there is nothing to exclude the possibility that some one else committed the robbery. While another party was with him, there is no statement or act, other than their presence together, that they were acting in a common design. There is absence of a showing that they were present when the robbery took place unless we assume that it was a lick on the head which caused Wickliffe to become unconscious, at the very time he was listening to the radio and in the presence of the accused. Wickliffe was discovered, in his wounded condition, at about five minutes after six and there is no evidence of his condition at that time which would indicate how long it had been since the assault. There was an intervening time of one hour and twenty minutes. So far as we are able to know, from the evidence, he might have fallen asleep. The appellant and the other negro might have left and some one else have committed the robbery. Or the appellant himself might have gone away, leaving the other man there, before the actual robbery took place.

The facts proven are not in such close juxtaposition to the factum probandum as to be equivalent to proof of the presence of the two, as was assumed by the State, and indicated in the court's charge. For many reasons we think that the circumstances were insufficient to exclude every reasonable hypothesis other than the guilt of the accused. A more lengthy discussion

would not aid the jurisprudence of our State for we find that all circumstantial cases have their characteristics and it is difficult to set one up as a standard by which another may be measured. Evidence which creates a strong suspicion may not sufficiently support a conviction and it is our conclusion that such is the case before us.

There are many bills of exception in the case which we are not discussing because the questions presented will probably not arise in the event of another trial.

Appellant's Bill of Exception Number One takes the position that the description of the money in the indictment requires more proof than the State submitted. The forty-three dollars were described as "current money of the United States of America, of the value of $43.00." It is presented, with many authorities, that it was incumbent upon the State to prove that it was current money of the United States of America, and that it had the value of $43.00. The only evidence on the subject is: "After I came to and my money was checked, I was missing $43.00. I did not give Woodrow Wilson Bufford or any one else my consent to take that money." Under the authority of Colter v. State, 39 S. W. 576, we think the evidence met the requirements. The witness said it was money and $43.00, which suffiiciently gives proof that it was current money and $43.00 in money is necessarily of the value of $43.00. See also Seals v. State, 78 S. W. (2d) 617.

Because the evidence does not meet the requirements, as correctly given in the charge, there was not sufficient evidence to sustain the jury's verdict.

The judgment of the trial court is reversed and the cause is remanded.