People of the State of Illinois, Appellee, v. Arthur Stewart, Appellant.

**Gen. No. 50,302.**

First District, Fourth Division.

September 15, 1965.

Sam Adam, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James B. Klein, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

The defendant, Arthur Stewart, was found guilty of robbery after a bench trial in the Criminal Court of Cook County and was sentenced to the penitentiary for a term of not less than two nor more than five years. In his appeal defendant urges that because of deficiencies and discrepancies in his identification coupled with "the inaccurate and imperfect memory of the trial court as to what the testimony had been," a reasonable doubt exists as to his guilt.

The only witness to the crime, Mrs. Corrine Freeman, testified that at about 7:45 p. m. on January 5, 1963, she was in the lighted vestibule of her apartment building at 1015 South Springfield Avenue, having returned from shopping, when a man approached her rapidly from behind and pulled at her purse; that she pulled back; that they tugged back and forth about six times; that the handle of the purse snapped aside

and that she chased after the robber as he ran outside but to no avail, then returned and called the police. She further testified that she had seen the thief approaching; that she was carrying a bag of groceries in one hand, waist high but to her side; and that the robber was wearing a brown hat broken down in front and a brown coat with the collar turned up around the neck. The witness then identified the defendant in court as the man who had robbed her. Mrs. Freeman further testified that she didn't remember telling the police officers who answered her call whether or not she had seen the robber prior to the crime, but later stated that she had told them that she had previously seen him at her place of employment; that on January 10 she went to the police station at the request of Detective Montgomery Jackson to view a lineup and, while standing in the hallway near the entrance, observed defendant enter the police station; that she immediately went to Detective Jackson "who was walking around the hallway . . . [and] told him that was the man that snatched my purse" [referring to defendant]; and that shortly thereafter she identified the defendant from a lineup.

Aldrich Law, one of the two officers responding to Mrs. Freeman's call, testified that when he arrived at her apartment she was "very nervous and upset"; that "she described the man as being about six-foot or better, about approximately 200 pounds, light brown complexion, hair color dirty sand or thereabouts. . . . [C]arried himself with a slump, and heavy voice, and freckles or some type of marks on his face"; and that the complaining witness told him that she had never seen the robber prior to the crime.

Detective Jackson testified that his first conversation with Mrs. Freeman was on January 7 at her apartment; that she gave him substantially the same description of the robber as that related by Officer

Law and told him then that she had seen the robber before; that he requested her to view a lineup at the police station on January 10 and that when she arrived at the specified time "I asked her to stand there in the hallway until I had arranged a lineup for her to view"; that he arrested Arthur Stewart immediately after Mrs. Freeman pointed him out in the hallway; that thereafter defendant was placed in a lineup of three men, defendant and his brothers Wilson and Floyd, and was positively identified by Mrs. Freeman.

Wilson Stewart, brother of defendant, testified that on January 10, 1963, he was arrested in his home for the crime of purse snatching and that defendant was present at the time. Arthur Stewart, testifying in his own defense, stated that he was not placed under arrest at that time but was arrested shortly thereafter at the police station where he went voluntarily to inquire about his brother Wilson. He stated:

> Well, when I walked into the station I asked the Desk Sergeant what had become of my brother. He said he didn't know but to go into the locker room. We walked in the locker room and the officer made the two of us [Arthur and another brother, Floyd] line up with him [referring to Wilson]. It was then I was picked out by this Miss Corrine Freeman.

He admitted having seen Mrs. Freeman previously where she worked but denied committing the robbery. Defendant further testified that on the night of the robbery he was at the movies with his wife but, at the time of trial (more than a year later) he and his wife were separated and he did not know her whereabouts; nor could he remember anything pertaining to the movie which he allegedly attended.

 Testimony of one witness alone, if it is positive and the witness credible, is sufficient to support

a conviction for robbery even though the testimony is contradicted by the accused. People v. Solomon, 24 Ill2d 586, 182 NE2d 736. In weighing evidence of identification the opportunity for a definite identification must be considered. People v. Donald, 29 Ill2d 283, 286, 194 NE2d 227. Mrs. Freeman had ample opportunity to closely observe the physical and facial characteristics of the robber both immediately preceding and during the course of the crime. She testified that she saw the robber approach and struggled with him at close range in the illuminated vestibule. Clearly the identification of the defendant was positive. The testimonies of Officer Law and Detective Jackson show that the witness never waivered in her description of the robber. Furthermore, she independently identified the defendant as he walked into the police station and again from the lineup, in addition to her identification at the trial. In People v. Ikerd, 26 Ill2d 573, 188 NE2d 12, the court held the identification of the accused to be sufficient, although the admissibility of an oral confession was also at issue. In that case, the complaining witness was hit on the head and dragged into a lighted vestibule and robbed. He was able to describe the robber's height, build, color and clothing to police when they arrived on the scene and also identified him in a lineup at the police station. The court emphasized that the complaining witness never waivered in his identification of the accused. The court said at page 580:

> Moreover, the identification in the case at bar was even more cogent than that deemed sufficient in People v. Capon, 23 Ill2d 254, where there wasn't even a lineup, and the identifying witness saw defendant for three minutes on the date of the robbery in June and only identified him from

a book of photographs sometime the following November, and again in court. The court there stressed the witness's original opportunity to observe defendant and that her identification was positive, credible and unshaken.

The testimony of the complaining witness that she told the uniformed officers that she recognized the robber as someone she had seen prior to the robbery was contradicted by the testimony of Officer Law. He also testified that Mrs. Freeman was "very nervous and upset." Detective Jackson emphatically stated that Mrs. Freeman told him (Jackson) she had seen the robber previously. The law is well settled that the effect of minor variations in testimony or lack of recollection by the witness upon the credibility of that witness is a matter for the trial court's determination. People v. Robinson, 30 Ill2d 437, 440, 197 NE2d 45. In a bench trial it is the function of the trial court to determine the credibility of the witnesses and the weight to be afforded their testimony. People v. Clark, 30 Ill2d 216, 195 NE2d 631.

■ After a twenty-eight-day continuance without objection, the trial resumed and the State called Detective Jackson in rebuttal. Defendant moved to strike this testimony on the ground that it was not rebuttal but only a repetition of the witness' previous testimony. Defendant now argues that the court's comment that "I didn't have my notes as clearly as they should have been and this is what I wanted to be refreshed" indicates an inaccurate memory of the proceedings and that the judgment should be reversed. We cannot agree that this conduct cast any reflection on the ability of the trial judge to properly reach his decision.

■ A reviewing court will not substitute its opinion as to credibility of the evidence unless the proof is so unsatisfactory as to justify a reasonable doubt of the guilt. People v. Boney, 28 Ill2d 505, 192 NE2d 920. Upon a consideration of the record we are of the opinion that the decision of the court below was justified.

Affirmed.

McCORMICK, P. J. and ENGLISH, J., concur.