## STATE

v.

## Daniel A. TRASK.

Supreme Judicial Court of Maine.

Nov. 10, 1966.

Roger F. Blake, County Atty., Belfast, for plaintiff.

Francis C. Marsano, Belfast, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, RUDMAN and DUFRESNE, JJ.

DUFRESNE, Justice.

At the October Term, 1965, of the Superior Court for Waldo County the defendant, Daniel A. Trask, was tried for robbery and convicted. The indictment charged the crime of robbery in the usual manner, to wit, that on the thirtieth day of August, 1965, the defendant made an assault upon one Ormond E. Lawing and from the person of said Ormond E. Lawing, stole twenty-five dollars belonging to the said Ormond E. Lawing. His post verdict motion for new trial was denied by the presiding Justice and his appeal from that ruling is before the Law Court.

■ The single question raised before this Court upon appeal from the denial of a motion for a new trial is whether in view of all the testimony, the jury was warranted in believing beyond a reasonable doubt that the defendant was guilty as charged. State of Maine v. Viles, Sr.,

161 Me. 28, 206 A.2d 539; State of Maine v. Ladd, 159 Me. 431, 432, 193 A.2d 914; State v. Croteau, 158 Me. 360, 361, 184 A.2d 683. And, in determining the sufficiency of the evidence to warrant belief beyond a reasonable doubt, the reviewing court on appeal from judgment of conviction must have in mind that it is for the jury to determine the credence to be given the witnesses and the weight of their testimony. State v. Brown, 142 Me. 106, 108, 48 A.2d 242; State v. Dodge, 124 Me. 243, 246, 127 A. 899, 901.

The record thus discloses that on August 30, 1965, one Ormond E. Lawing, a professional sailor with the United States Merchant Marine, had gotten off his ship in Searsport, journeyed by taxicab to Belfast, and met the defendant, whom he did not know previously, in a restaurant sometime after 5:30 p. m. In the cocktail lounge, Lawing and the defendant engaged in conversation which touched upon a variety of topics ranging from economics to bootleggers to girls. In the course of the evening, when the discussion concerned the economic opportunity of merchant seamen, Lawing jokingly asserted that he had $200 in his pocket, whereas in truth he had started out with only $40 which supposedly would determine the length of his leave. Two female patrons were more or less integrated into the party and benefited from Lawing's generosity when he bought drinks for the group. The defendant was drinking beer while Lawing was having "screwdrivers." Lawing's statement that he left the restaurant with the defendant between 10:00 and 10:30 p. m. is corroborated by the witnesses. His version of subsequent events reveals that, after having accepted defendant's invitation to visit female friends of his, Lawing proceeded to accompany him to an area, away from the Main Street, which lay beyond a rocky steep hill, "just shooting the breeze about things" as they were walking along. As he neared the foot of the hill and looked around to see where defendant was, Lawing says that he was struck by the defendant on the back of the head, thinks that this blow was landed by his fist, and that, as he asked his assailant, "what are you doing this for?", the statement that he heard was either "you've got too much money" or "I need some of your money." After that, he was "clobbered" into unconsciousness. He positively identifies the defendant as the man who struck that first blow, but remembers nothing from that moment when he became unconscious to sometime the next morning at about 8:00 a. m.

Lawing stated that in the area where he was assaulted, he did see a house, a car in the driveway, a pile of firewood nearby and was positive that he had about $25. left on his person at that time. His injuries to the head and body turned out to be very severe and inconsistent with a mere fist injury according to some of the medical testimony. A pool of blood near the automobile, plus bloody splashes upon certain areas of the car, positively corroborate Lawing's description of the theater of action. The stillness of the night engulfing Lawing's inert form following the assault continued on until about 1:00 a. m. Thereafter noises, moans or groans from the area were heard by a railroad attendant and the occupant of the house near the spot where Lawing was felled, but were discounted as the agitations of a drunken person. Dogs were also alerted about the same time to the disturbance. Another resident of the area was driven home by his brother-in-law and both noticed the single person around some tipped trash cans, but neither went close enough to the man to observe his injured condition. An initial police check of the area from the cruiser car revealed nothing. It is only at about 3:00 a. m. that a taxidriver accompanied by a police officer found Lawing and removed him from the area. Shortly thereafter, as testified to by the taxi-driver, it came to light that Lawing had no money on his person. His empty wallet was found later that morning of the thirty-first by the police in the immediate vicinity of the assault together with Law-

ing's social security and American Legion cards.

Defendant contends that the evidence was insufficient to prove guilt beyond a reasonable doubt on the following grounds. He first says that Lawing's identification of his assailant is incredible because of Lawing's intoxicated condition and of the obscurity surrounding the area where the attack took place. We disagree. Defendant had been with Lawing for some 3 to 4 hours immediately prior to the eventual battery, was the only person with him in the area within a second of the first blow and was positively identified as his assailant. Witnesses confirmed that Lawing was feeling "high" but was not intoxicated, and the evidence pictured the scene in semi-darkness and not in complete obscurity. Undoubtedly, defendant's goatee more than any other personal characteristic or other circumstance brought home to Lawing in accurate focus that his charging foe was none other than his accompanying friend. The jury had the right to believe Lawing's testimony which under no possible view can be characterized as impossible, incredible or otherwise insufficient.

Proof beyond a reasonable doubt may rest upon the testimony of a single witness. State of Maine v. Newcomb, 146 Me. 173, 78 A.2d 787. The testimony of a robbery victim, if it is positive and credible, when believed by the trier of facts, is sufficient of itself to warrant a conviction and no corroborative evidence is required. People v. Stewart, 62 Ill.App.2d 428, 211 N.E.2d 154 (1965).

From the evidence, the jury had a right to infer that Lawing was the only person in this out-of-the-way area from the time of the assault by the defendant at about 10:30 p. m. to the time he was noticed by the occupant of the nearby house, the railroad employee, the neighbor and his driver, and until he was removed from the area by the taxi-driver and the police around 3:00 a. m. It is true that one of these witnesses identified the person seen in the area as someone other than Lawing, but such testimony, which was positively contradicted by another witness, was evidence for the consideration of the jury, and under no circumstances was it binding upon them and they had the right to reject the same.

The defendant further advances that the State failed to prove beyond a reasonable doubt that the crime happened on the 30th day of August as charged in the indictment, and that if any crime took place, it occurred on the 31st of August. It is true that a medical witness for the defendant cast some doubt on the exact time of the occurrence of the assault when he as an expert testified that it would be his "probable feeling" that the assault would have occurred later in time than 10:30 p. m. Such testimony was not controlling upon the jury, nor was it inconsistent with a finding that Lawing was "out" before the count of twelve, midnight.

Defendant's third contention is more substantial. He claims that even if we assume the evidence was sufficient to prove the crime of assault against him beyond a reasonable doubt, it falls short of sustaining the crime of larceny from the person which is a necessary ingredient of the crime of robbery. It is true that Lawing could not testify that the defendant took away from him whatever money he had at the time of assault and there is no evidence of defendant's subsequent possession of Lawing's money.

Mere suspicion, however strong, without due proof of the corpus delicti or the crime charged will not take the place of evidence and warrant a conviction. State of Maine v. Levesque, 146 Me. 351, 359, 81 A.2d 665; State v. Caliendo, 136 Me. 169, 175, 4 A.2d 837. Mere opportunity to commit the crime standing alone is not enough. Where the evidence discloses no more than an opportunity for the defendants to take the money and the evidence shows an equal opportunity for others to have taken the money, then under such circumstances to find that any particular person took the money is to

enter the realm of speculation, and verdicts so found may not stand. State v. Murphy et al., 225 N.C. 115, 33 S.E.2d 588, at page 589. See also, State v. Holland, 234 N.C. 354, 67 S.E.2d 272.

The State however seeks justification for the jury verdict of guilt as to the robbery under the rule espoused by some authorities that the commission of robbery may be established beyond a reasonable doubt by proof that the victim had certain property of value on his person at the time of an assault rendering him unconscious. and that said property was missing when he regained consciousness. See People v. Dodson et al., 77 Cal.App.2d 389, 175 P.2d 59 (3rd D., Cal.1946). 46 Am.Jur. Robbery, § 51, p. 162.

We agree that such a rule might be applicable when the period of time between the assault rendering the victim unconscious and his regaining of consciousness is of short duration, as under such circumstances it would be only reasonable for the jury to assume, in the light of human experience and the propensities of people, that the perpetrator of the assault took the missing property from the person of the victim, rather than surmise that some other person with larcenous designs might have happened along and taken advantage of the situation. See, People v. Hubler, 102 Cal.App.2d 689, 228 P.2d 37 (2d D., Cal.1951).

However, we do not wish in this case to rest our decision on such a rule. The evidence herein shows more than motive in the defendant to commit robbery; it establishes more than mere opportunity. Lawing testified, and his testimony thereon was not impeached in the slightest degree, that at the very moment of defendant's attack upon him, when the defendant was pressed for the reason for the assault, the statement was made, "you've got too much money" or "I need some of your money." This response made in the actual performance of the acts which were taking place was part of the res gestae and disclosed in unmistakable terms the perpetration of a robbery rather than that of a mere assault. The jury had a right so to conclude. Such evidence was sufficient to prove the immediate commission of the larceny from the person beyond a reasonable doubt just as much as any testimony of the assaulted person or some eye witness to the effect that the attacker had searched the body and taken the money. Under the facts of this case, any contrary finding to the effect that the perpetrator of the assault had not immediately expropriated Lawing's money would be unreasonable and conjectural.

Cases cited by the defendant are distinguishable. In People v. Ohle, 408 Ill. 238, 96 N.E.2d 476 (1951), the court stated that it was highly improbable that the victim still had the ten dollars at the time of the assault. We do not have such a problem in the instant case.

In Bufford v. State, 148 Tex.Cr.R. 50, 184 S.W.2d 843 (1945), the evidence was conjectural as to the presence of the accused at the time of the assault, as it was possible that the victim was asleep when assaulted. In the instant case, proof of the assault by the defendant beyond a reasonable doubt was made.

In State v. Holland, 234 N.C. 354, 67 S.E.2d 272 (1951), the court said that it was significant that a substantial amount of money, together with the taxi-driver's money changer with $6 in it, was not missing after the assault and that such circumstances were inconsistent with the theory of robbery.

In Hunt v. United States, 115 U.S.App. D.C. 1, 316 F.2d 652 (1963), the evidence was just as consistent with the victim's accidental dropping of her wallet in a jostling crowd as with an inference that it was taken directly from her.

The present case rather falls within the factual pattern disclosed in People v. Rogers, 303 Ill. 578, 136 N.E. 470 (1922). In that case, the contention was made that

the evidence did not show a completed crime of robbery, but, at most, an assault with intent to commit robbery, as no witness could state that he saw or knew who had taken the package of money. But the court rejected such claim with this statement: "The robbers were after money—the particular package in question—*and that is what they* demanded. They were not interrupted in the holdup by anybody, *and it follows as a moral certainty* that they did not voluntarily go off and leave the package on the sidewalk after they made Plomgren drop it. Jurors, as well as courts, are permitted to use their common sense in drawing conclusions that naturally are to be drawn from facts proved." (Emphasis added.)

■ The jurors found that the crime of robbery was completed at the time of the assault at about 10:30 p. m. as they had a right to do from the evidence. The presiding Justice without objections had instructed them more favorably to the defendant perhaps than the defendant had a right to expect without resort to bill of particulars, that "[y]ou also have to be satisfied, and, of course, beyond a reasonable doubt, that this offense took place on August 30, 1965, that is an essential element." We must presume that the jury followed the instructions of the Court. State v. Wright, 128 Me. 404, 148 A. 141; Goldstein v. Sklar, 216 A.2d 298, 302 (Me. 1966). Notwithstanding our reference to the above excerpt of the trial judge's charge in the instant case, we do recognize that as a general rule the prosecution is not confined in its evidence to proving the commission of the offense at the time alleged in the indictment or complaint, unless time be of the essence of the offense or may have been made so by reason of the allowance of a bill of particulars.

■ We may paraphrase the language of the court in Wigfall v. United States, 97 U.S.App.D.C. 252, 230 F.2d 220 (1956), as it is applicable: "the proven circumstances in the present case are not as consistent with innocence as with guilt. Only by speculating outside the proven facts could innocence be inferred, and the jury was not compelled thus to speculate. * * * If the jury believed the testimony of the woman complainant, [herein the testimony of Lawing] as they had a right to do, they might well have excluded every hypothesis save that of Wigfall's [Trask's] guilt as a factual inference from the proven facts."

There was no error and therefore the entry will be

Appeal denied.