**STATE of Maine**

v.

**Alfred J. W. BAZINET.**

Supreme Judicial Court of Maine.

April 29, 1977.

Thomas E. Delahanty, II, Dist. Atty., Richard L. Trafton, Legal Intern, Auburn, for plaintiff.

Gary Goldberg, Jack H. Simmons, Berman, Berman & Simmons, P. A., Lewiston, for defendant.

Before POMEROY, WERNICK, ARCHIBALD and GODFREY, JJ.

GODFREY, Justice.

After a trial by jury, appellant was convicted of the rape of a fifteen-year-old girl. Asserting that three substantial errors were committed during the trial, he seeks a reversal of the judgment.

I

The State attempted to establish that the crime occurred on a particular patch of muddy ground in the undergrowth abutting a school driveway in Lewiston. In addition to the victim's testimony, the State presented that of a physician who had examined her shortly after her attack. After testifying that she had found signs of intercourse with trauma, the doctor stated that she had observed three patches of mud on the girl's right leg. Over defense objections the court then admitted a photograph in evidence which showed the girl's right leg and the mud thereon. Because this photograph had been marked with three small arrows drawn in ink and pointing toward the mud patches observed by the doctor, the appellant argues that the court erred in admitting the photograph because it gave undue prominence to evidence prejudicial to his case.

When questioned about the photograph, the doctor testified that she herself had taken the picture in the course of examining the victim. She stated that the photograph fairly depicted what she had seen and that its use at trial would be of aid in explaining her observations to the jury. She further testified that it had been a nurse, acting under her express instructions, who inserted the small arrows shortly after the picture was taken.

 The admission in evidence of photographs is best left to the sound discretion of the presiding justice. *State v. Rollins,* 295 A.2d 914 (Me.1972); *State v. Duguay,* 158 Me. 61, 178 A.2d 129 (1962). Although it is generally preferable that photographs to be introduced as evidence not be marked upon, we find no abuse of discretion in the trial court's ruling. The photograph was merely cumulative evidence corroborating the testimony of two prior witnesses. The presence of the arrows was explained by the person responsible for their insertion. The arrows were unobtrusive and did no more than point out what was apparent from the photo itself. In no way did they distort or obliterate relevant portions of the picture. Had the arrows not been inserted, it would have been proper for the doctor to point out the particular mud patches to the jury at trial. We find no prejudice to the defendant by the admission in evidence of the marked photograph.

II

At approximately 5:30 p. m. on November 19, 1975, the second day of the four-day trial, the unsequestered jury was sent home for the evening. There then ensued a long and, at times, heated bench conference concerning the admissibility of certain test results contained in an F.B.I. report. Although defense counsel had asked that the conference be held in chambers, it was held in the open courtroom where various representatives of the press were present.

The following morning a local newspaper published an article about the trial that included a discussion of the bench conference of the evening before. The article accurately reported that there was evidence contained in an F.B.I. report which was inadmissible and would not be seen by the

jury. The same morning, in chambers, defense counsel requested the trial judge to voir dire the jury for potential prejudice arising from the article. It is the presiding justice's refusal to conduct such a voir dire and his subsequent denial of a motion for mistrial which the appellant raises as his second point on appeal.

■ In his brief the appellant properly observes that once a juror has been exposed to potentially prejudicial extraneous information, the trial court must make appropriate inquiry to insure that the fairness of the trial has not been compromised. Once the possibility of prejudice has been established, a presumption arises that the verdict was thereby affected. *State v. Kelley,* 357 A.2d 890 (Me.1976); *see also Simmons v. State,* 222 A.2d 366 (Me.1966). In such a case, failure to conduct a voir dire or, in the absence of appropriate inquiry, the subsequent failure to grant a mistrial would generally be ground for reversal.

However, in the cases cited above, the presumption of prejudice and resulting duty of the trial court to voir dire the jury arose only after a finding had been made that potential prejudice existed. In the present case, the court expressly determined that the article in question did not contain information potentially prejudicial to the defense.

■ To sustain the appeal in this case we would have to reach one of two conclusions: either that the presiding justice erred in finding no potential prejudice or that, as a matter of law, the mere publication of extraneous information during trial in itself creates a possibility of prejudice which in turn, under the cases cited above, raises a presumption of actual prejudice and the duty to voir dire or grant a mistrial.

■ The latter alternative must be rejected. To mandate a voir dire even when the information hypothetically presumed to be prejudicial is in fact plainly innocuous would waste time and insult the intelligence of court, counsel and jurors. Indeed, the unnecessary polling of jurors might give undue emphasis to unimportant mat-

ters. *See Gordon v. United States,* 438 F.2d 858, 872 n. 39 (5th Cir. 1971), *cert. denied,* 404 U.S. 828, 92 S.Ct. 139, 30 L.Ed.2d 56 (1971).

■ The fair, efficient and intelligent administration of justice requires that a trial judge be empowered to make a threshold inquiry into whether potential prejudice exists. *See Rioux v. Portland Water District,* 132 Me. 307, 170 A. 63 (1934). If none is found the trial should proceed. Only when potential prejudice is determined to exist should the presumption of actual prejudice arise and the duty of the court to voir dire attach.

■ The issue to be resolved in this appeal, therefore, is whether the trial justice erred in finding no potential prejudice. The newspaper article in question, which has been made part of the record on appeal, must be placed in proper perspective. First, the reported colloquy between counsel the night before had resulted in a stipulation providing for the admission in evidence of portions on the F.B.I. report. Thus, part of the evidence the existence of which might have been made known by the article was shortly thereafter presented to the jury.

The article complained of was a full account of the trial proceedings the day before, containing forty-four paragraphs and occupying about thirty-five column inches. Only six paragraphs, or five column inches, dealt with the bench conference of the evening before. The rest of the article consisted of an unbiased account of events which had occurred in the jury's presence. Of the six paragraphs about the bench conference only one referred to evidence not later stipulated to and admitted. Although that one paragraph made mention of a laboratory test conducted on certain hair samples, it did not report the results of the test. The report stated that defense counsel considered the inadmissible laboratory test results to be exculpatory for his client. As the presiding justice observed, a reader of the article would infer, if anything, that the State had attempted to keep

out evidence favorable to the defense. Such an inference would be favorable, not prejudicial, to the defendant.

At the beginning of the trial the court had instructed the jury as follows:

"There may be material about this [trial] in the press, and I am going to ask you not to read the newspapers, and if you should inadvertently read it, please do not pay any attention whatsoever to that . . . ."

In the absence of evidence to the contrary, it should be assumed that jurors have followed the instructions given them by the court. *State v. Trask,* 223 A.2d 823 (Me. 1966); *State v. Wright,* 128 Me. 404, 148 A. 141 (1929).

In the context of what occurred at the trial after the reported bench conference, we cannot find that the court erred in deciding the article lacked potential prejudice. He did not abuse his discretion in declining to conduct a voir dire or in denying the motion for a mistrial.

### III

Twice in the proceedings, once in the State's opening and again on direct examination of the prosecutrix, express reference was made to the victim's virginity before the rape. It is the court's refusal to grant his requested mistrial on the basis of these references that the appellant raises as his final ground of appeal.

A distinction exists between assertions made by counsel in opening statement and the testimony of witnesses during trial. The latter is evidence; the former is not. Before trial in the instant case, the jury was given the standard instruction that anything said in an opening statement was not evidence and could not be considered in reaching a verdict. Ordinarily, such an instruction may be regarded as causing a jury to disregard an assertion of fact made in an opening statement whether or not the fact asserted is prejudicial. However, in order to have the jury disregard testimony later in the trial tending to prove the same fact, separate and timely objection should be made so that the testimony can be stricken and a curative instruction given.

The appellant objected to the prosecutor's opening statement but did not later object when the victim testified on direct examination about her prior virginity. The appellant has lost any right to appeal on the ground that this allegedly prejudicial testimony of the victim was admitted in evidence. *State v. Mann,* 361 A.2d 897 (Me. 1976).

Even if appellant had objected to the proffered testimony and thus preserved his right to assign its admission as error, we would not deem the evidence so prejudicial, in the context of this particular trial, as to warrant a mistrial below or reversal here. The presiding justice should deny a motion for mistrial except in the rare case when the trial cannot proceed with the expectation of a fair and impartial result and where no remedial measure short of a new trial will satisfy the interests of justice. *State v. Kelley,* 357 A.2d 890 (Me. 1976). A motion for mistrial is addressed to the sound discretion of the presiding justice whose ruling should not be disturbed in the absence of a clear abuse of discretion. *State v. Hachey,* 278 A.2d 397 (Me.1971).

The prosecutrix in this case was just fifteen years of age. The trial judge perceived the potential problems that fact entailed when he denied the motion for a mistrial, observing that the chief source of possible prejudice to the defendant lay in the victim's tender years, not in the testimony that she had been a virgin. He determined that this problem could not be alleviated by the granting of defendant's motion for a mistrial and the likely subsequent impaneling of a new but equally human jury. Rather, the problem was one to be resolved by a careful charging of the existing jury.

The record demonstrates that the court was consistently sensitive to the defendant's fear of prejudice. It twice cautioned the jury that an assertion made in an opening statement is not evidence and, even

though defendant did not object to the victim's testimony about her prior virginity, the presiding justice instructed the jury that the victim's virginity was not at issue and should not be considered by them in reaching a verdict. There appears to be no reason for us to impute to those jurors a disregard of their instructions.

In view of the circumstances existing at the trial, we cannot say that the presiding justice's denial of the motion for a mistrial was an abuse of discretion or that the manner in which the trial proceeded was unfair.

The entry is:

Appeal denied.

All Justices concurring.

DUFRESNE, C. J., did not sit.

DELAHANTY, J., did not sit.