**STATE of Maine**

**v.**

**Harley LIBBY, Stephen Yates, and Paul Parsons.**

Supreme Judicial Court of Maine.

Argued Sept. 15, 1981.

Decided Oct. 15, 1981.

John D. McElwee, Dist. Atty., Brian E. Swales, Asst. Dist. Atty. (orally), Houlton, for plaintiff.

E. Paul Eggert (orally), Daniel G. Lilley, Portland, for Parsons.

Peter S. Kelley, P. A. (orally), Caribou, for Yates.

Evans & Rush, Daniel T. Rush (orally), Millinocket, for Libby.

Before McKUSICK, C. J., and GODFREY, NICHOLS, ROBERTS, CARTER and WATHEN, JJ.

McKUSICK, Chief Justice.

Defendants Harley Libby, Stephen Yates, and Paul Parsons appeal from their convictions in Superior Court, Aroostook County, of arson and criminal mischief.[1] They complain that they were denied a fair trial because a remark made by a witness at trial and a newspaper article to which some of the jurors were exposed may have revealed to the jury that defendants had been tried before for the same crimes. In addition, Parsons separately argues that the evidence against him was insufficient to convict. We affirm the convictions of all three defendants.

At trial Kenneth Libby, brother of defendant Harley Libby, testified that at about 4:00 a.m. on Saturday, August 20, 1977, he and his wife Laurie were awakened by Harley Libby's unexpected entry into their house in Moro. Harley, who had been drinking heavily, complained that he could not find a job because local pulpwood companies were hiring Canadian woodsmen. Harley sought to enlist his brother's aid in burning the mobile cabins, called "bachelor camps," used to house the Canadians employed by Maurice Bugbee, a pulpwood operator on International Paper Company lands. He thought the mission would be safe on a weekend, when the camps were vacant, and would force Bugbee to hire local woodsmen. Though sympathetic, Kenneth talked his brother out of attempting the crime.

About 9:00 or 10:00 p.m. on Sunday, August 21, Harley Libby returned to Kenneth's house carrying a .22 caliber pistol and accompanied by defendants Yates and Parsons, and by two others not involved in this appeal, Calvin McCarthy and Brian Do-

nahue. They had all been drinking. In the presence of the others Harley told his brother they were going to burn the Bugbee camps, and this time Harley succeeded in recruiting Kenneth's assistance. All six drove north on Route 11 to the entrance of the woods road leading to the camps in Township 7, Range 5; Kenneth Libby drove his brother and Yates in his pickup truck, while McCarthy took Parsons and Donahue in another. Some member of the group, not identified in the testimony, carried an ax. All except the drivers got out and walked down the woods road toward the camps situated some quarter of a mile off Route 11. Equipped with walkie-talkies, McCarthy and Kenneth Libby drove a short distance south and north, respectively, on Route 11 to take positions as lookouts. When Kenneth Libby heard the sound of three or four .22 caliber gunshots, he returned to the camp access road, soon to be joined by McCarthy. They heard much commotion coming from the direction of the camps, and McCarthy left to drive back to Kenneth Libby's house. A passerby stopped to tell Kenneth Libby he had observed a fire in the area of the camps from a hilltop vantage point. Libby himself could now see a glow over the treetops.

After Kenneth Libby had sent the passerby off to Masardis to call the fire department, Parsons and Donahue emerged from the woods, followed by Yates and Harley Libby. Kenneth Libby took them all back to his house, McCarthy having returned alone some fifteen minutes ahead of them. They all drank and Harley Libby boasted of having destroyed the entire camp and equipment. Three guns, including the .22 caliber pistol, were laid on Kenneth's kitchen table, on the understanding that he would hide them. All participants agreed that as an alibi they would claim to have been playing cards at Kenneth Libby's house.

Laurie Libby, Kenneth's wife, testified that when Yates returned to her house with the others on the night of August 21 he

---

1. See 17–A M.R.S.A. §§ 802, 805 (Supp.1980).

spoke of how well a truck would burn when first treated with engine starter fluid. She testified that "[d]uring the discussion of the fire, they had taken their guns off"; and in answer to the State's question whether she remembered "any particular individual who took guns off," she said, "Lee [Harley Libby] took a gun off and Brian Donahue and Paul Parsons laid a gun on the table."

A state police officer, state fire inspector, and Maurice Bugbee testified to the condition of the camps and surrounding equipment following the events described above. Many of the camps and trucks had been extensively damaged by fire, and some of them totally destroyed along with equipment and tools stored inside. Matches and flammable fluids at the scene suggested arson. One truck had been shot up by gunfire; a ballistics expert testified that two .22 caliber shell casings found on the premises matched test casings from Harley Libby's gun. Other equipment and structures were vandalized. Mr. Bugbee estimated the damage to the property of himself and International Paper Company at $100,000.

## I.

 Defendant Parsons contends that the evidence against him is insufficient to support his conviction, claiming that it establishes no more than that he was present during the planning and commission of the crime. Were the evidence in fact no more extensive than he claims, Parsons would be entitled to a reversal of his conviction, for presence at the scene of a crime without anything more does not prove guilt. *See State v. Gervais*, Me., 394 A.2d 1183, 1185 (1978). Once a defendant's presence has been proven, however, the State need prove only any conduct promoting or facilitating, however, slightly, the commission of the crime. In *Gervais*, for example, the necessary increment was provided by evidence that the defendant, who was present with the principal before and during the commission of a crime, was also a friend of the perpetrator and did nothing to disengage himself from continuing in the company of

the perpetrator after the crime. *See id.* at 1185–86.

The evidence tying Parsons to the crimes of arson and criminal mischief goes well beyond mere presence. Parsons not only attended the meeting at Kenneth Libby's house where the crimes were planned, but also rode voluntarily to the Bugbee camp with the others and walked down the woods road toward the camp with them, knowing what they intended to do upon reaching their destination. He came back with the others from the direction of the camps to the waiting pickup truck, and returned with them to Kenneth Libby's house, where they discussed the crimes and concocted an alibi. According to Laurie Libby, Parsons was involved in leaving one of the three guns at the Libby house for safekeeping following the escapade.

 Defense counsel correctly points out that the record does contain some suggestions that Parsons may not have been as culpable as his companions. There was testimony that he was drunk throughout the evening and that he did not participate in the conversations of the others. Laurie Libby's testimony is ambiguous, Parson's attorney argues, in that literally she spoke of *a* gun being laid on the table by *two* men, Donahue and Parsons.

Those mere glimmers of doubt as to the extent of Parsons' participation in the crimes do not, however, compel reversal of his convictions. The presiding justice properly instructed the jury that intoxication is a defense if "it establishes a reasonable doubt as to the existence of an element of the crime." *See* 17–A M.R.S.A. § 58–A (Supp.1980). The jury's verdict of guilt must therefore be seen as a finding of fact that Parsons was not too drunk to have had the requisite criminal intent to damage or destroy the property at the Bugbee Camps. Since on the evidence before it a rational jury could have found beyond a reasonable doubt that Parsons was sufficiently sober to have a conscious object to cause the results of his conduct, *see* 17–A M.R.S.A. § 10(1)(A), we cannot say the jury that convicted Parsons erred in rejecting the defense of intoxication.

Although Laurie Libby could have been more precise in her testimony, she did in any event clearly implicate Parsons as having a gun. From the whole evidence viewed in the light most favorable to the State, including Kenneth Libby's testimony that three guns were left with him, the jury would have been justified in finding that Parsons, on returning to the Libbys' house, took a gun off and laid it on the kitchen table and hence, that Parsons had worn a gun during the escapade at the Bugbee camps.

■ Even if Parsons did remain silent, he was present at the planning, execution, and "debriefing" of the criminal enterprise, and the jury could rationally infer that by that presence he aided his companions in venting their anger at the employer of Canadian pulpcutters. The presiding justice properly instructed the jury on the law of accomplice liability laid down by 17–A M.R.S.A. § 57 (Supp.1980). The evidence against Parsons was more than ample to justify the jury in convicting him at least as an accomplice. The incriminating evidence exceeded the minimum necessary to sustain a conviction on appellate review, namely, such proof that, when viewed in the light most favorable to the State, a rational jury could have found guilt beyond a reasonable doubt. *See State v. Theriault*, Me., 425 A.2d 986, 988 (1981).

## II.

The convictions here on appeal resulted from the second trial of these three defendants on the same indictments. At their first trial, the three defendants were found guilty on February 1, 1979, but their first convictions were set aside by this court because of improper prosecutorial comment on their failure to testify.[2] *See State v. Libby*, Me., 410 A.2d 562 (1980). During her cross-examination at the second trial by one of the defense counsel, Laurie Libby remarked, apparently inadvertently, that she and her husband "haven't discussed it [the crime] since the last trial very much." Defendants' counsel raised no contemporaneous objection, but later moved for a mistrial on the grounds of irremediable prejudice from the reference to the first trial. The presiding justice denied the motion, finding the statement nonprejudicial.[3] Defendants on appeal claim that ruling was reversible error.

■ In the first place, it is dubious that defendants have saved their objection to Mrs. Libby's testimonial reference to "the last trial." Their counsel took no step immediately to call the reference to the presiding justice's attention out of the jury's hearing. Although they perhaps decided they did not want any cautionary instruction given for fear the damage would only be increased thereby, their silence deprived the justice of any opportunity of considering an immediate instruction as a remedy. Rather, all three defense attorneys delayed making any objection until after all of them had completed cross-examining Mrs. Libby after the State had then rested, and after the defense had made and argued and the justice had denied motions of acquittal. *Cf. State v. Mimmovich*, Me., 284 A.2d 282, 287 (1971) (waiver of objection where alleged misconduct of two jurors was not brought to judge's attention in a motion for new trial until the following day, after the jury had withdrawn to deliberate). The presiding justice, however, considered defense counsel's motion for a mistrial on its merits and we will accordingly review his denial on the same basis. "A motion for mistrial is addressed to the sound discretion of the presiding Justice," *State v. Baker*, Me., 423 A.2d 227, 231 (1980), and we review his denial of such a motion only for abuse.

■ The justice below did not abuse his discretion in denying defendants a mistrial.

---

2. Only Libby and Yates first appealed, but the State consented to retry Parsons also because the improper prosecutorial comment tainted his conviction as much as that of his co-defendants.

3. The justice also found that though the statement was elicited under cross-examination by defendant Parsons' attorney, it was not the product of a conscious effort to inject error into the record.

Under the rule of *State v. Bazinet*, Me., 372 A.2d 1036 (1977), "once a juror has been exposed to potentially prejudicial extraneous information, the trial court must make appropriate inquiry to insure that the fairness of the trial has not been compromised." *Id.* at 1039. If the trial court finds a reasonable possibility of prejudice, a presumption arises that the verdict will be tainted; if he finds none, the matter is ended unless his determination was clear error. The justice below complied with the procedural requirements of *Bazinet* by making a finding of fact that Laurie Libby's statement was not prejudicial. This was not clearly error. Knowledge by jurors that a prior trial had occurred is not *per se* prejudicial to defendants. *See People v. Knippenberg*, 70 Ill. App.3d 496, 500, 26 Ill. Dec. 805, 809, 388 N.E.2d 806, 810 (1979). Mrs. Libby's brief, cryptic reference to the "last trial" left unclear who was tried, for what, and with what outcome. Moreover, fair deference is owed the presiding justice's finding on the spot because he observed exactly how Mrs. Libby made her offending remark and how the jurors reacted to it. The justice was also justified in inferring from defense counsel's unusual delay in moving for a mistrial that they also at the time of Mrs. Libby's statement viewed it of little consequence.

█ The justice below acted well within his discretion in denying defendants' motion for a mistrial.

### III.

█ On a request by defendant Parsons' attorney, the presiding justice conducted a collective *voir dire* examination of the jurors to determine if any had heard of or read a front-page story in the *Bangor Daily News* headlined, "Three face retrial in woods camp fire." Two jurors admitted to having seen the headline, six others to having heard about it. The remaining five had neither seen nor heard of it. On individual *voir dire*, those jurors who admitted any knowledge showed no understanding that defendants had faced trial before; all they knew was that the newspaper article pertained to the current trial. The presiding justice found that none of the jurors had learned anything prejudicial. Defendants made no objection. In absence of objection at trial, the presiding justice's finding must be sustained on appeal unless infected with obvious error. *See State v. Carey*, Me., 303 A.2d 446, 449 (1973). As we have noted above, jurors' knowledge of a prior trial does not *per se* mean they cannot give a fair trial to an accused on retrial. Since the *voir dire* revealed that the jurors had failed to glean from the headline the prejudicial inference feared by defendants, we find no error, obvious or otherwise, in the justice's conclusion that defendants were not prejudiced.

The entry must be:

Judgments of conviction affirmed.

All concurring.