W. E. REED v. THE STATE.

No. 13634. Delivered December 11, 1929.

The opinion states the case.

*V. L. Shurtliff* of Breckenridge, for appellant.

*L. H. Welch,* District Attorney of Breckenridge and *A. A. Dawson* of Canton, State's Attorney, for the State.

CHRISTIAN, JUDGE.—The offense is cattle theft; the punishment confinement in the penitentiary for two years.

On July 14, 1928, E. B. Milam lost a Hereford bull from his herd of cattle. This animal had strayed from Milam's pasture on other occasions. Appellant owned a herd of cattle which ranged in a pasture near Milam's. Milam made inquiry of cattlemen as to whether they had seen his bull. After a conversation with one Corbett, Milam went to see appellant on July 22nd. He asked appellant if he had seen his bull. Appellant replied: "Hell, I done butchered him." Mr. Milam said "I do not know about it, but you have been accused of it." Appellant then said: "I know they have been watching me, but they never caught me." Milam and appellant then engaged in a conversation relative to where the lost bull might be found. Appellant suggested that a bull answering the description of Milam's bull was in a pasture belonging to one Will Martin. Milam testified that appellant was a great hand to joke. A witness testified that he saw a bull of the description of Milam's in appellant's pasture running with appellant's cattle. He said appellant was not with the cattle. On August 4, after having talked to some officers, Milam went to the Johnson Produce House in Breckenridge, where a hide was exhibited to him. The stolen bull had peculiar flesh markings. Milam testified that he found these peculiar markings on the hide exhibited to him at the produce house. Other witnesses testified to seeing a light brand on the hide, which corresponded to a brand that had been placed on Milam's bull. These witnesses and Milam identified the hide as having belonged to the stolen animal. Appellant sold a hide to Johnson Produce Company on July 28, 1928. Appellant testified that the hide he sold to the produce house was taken from a steer he had butchered the day before, his statement being that the steer belonged to him. He sup-

ported his testimony by that of witnesses who said they saw him butcher a steer. The state met appellant's theory by offering witnesses who testified that they were at appellant's place on the day he claimed to have butchered the steer, and that he did no butchering on that occasion. A. A. Johnson and his wife were proprietors of the produce house. A brother of A. A. Johnson worked for them. The brother was not called as a witness by either the state or appellant. Mr. and Mrs. Johnson testified that appellant sold them a hide on July 28, but stated that they did not know whether the hide exhibited to Milam was the one appellant had sold them. On July 27 the Johnsons shipped out all hides they then had on hand. As to the number of hides that accumulated from July 27 to August 4, the record is silent. The state undertook, by a process of elimination, to establish the fact that the hide sold by appellant to the produce house on July 28 was the same hide Milam identified as having belonged to his Hereford bull. A. A. Johnson and wife identified checks they had given for hides during the period of time mentioned, and the parties to whom the checks were given, with the exception of one, testified they had sold no bull hides to the produce house. The description of the bull hide sold by one of the witnesses did not suit the hide claimed by Milam. Whether or not hides were always paid for by the giving of checks by the Johnsons was not shown. Nor does the record disclose whether the parties to whom the checks had been given from July 27 to August 4 were the only ones who had sold hides to the produce company. One witness testified that he sometimes received cash for his hides.

The court charged on circumstantial evidence. It was incumbent upon the state, in order to place appellant in possession of the lost animal, to show that the hide found by Milam and the officers at Johnson Produce had been sold to the Johnsons by appellant. It is true that, touching the question of possession by appellant, the state offered in evidence the fact that appellant said he had butchered the bull. However, the connection in which this statement was made renders it of little probative force. That it could be taken as a confession of guilt is negatived by the fact that in the same conversation appellant told Milam he might find his bull in Martin's pasture, and the further fact that appellant was a great hand to joke. Hence, in determining whether the circumstances are sufficient to meet the requirements of the law, we eliminate the statement from consideration. In attempting, by a process of elimination, to exclude every other reasonable hypothesis except that appellant had sold the hide

in question to the Johnsons, the state failed to show how many hides had been bought from July 27 to August 4, inclusive, and failed to show that the checks introduced in evidence accounted for all hides on hand on August 4, the date when the bull hide was exhibited to Milam and identified as being his property. Moreover, the record is silent as to whether the only method of making payment for hides was by check. Again, it is noted that A. A. Johnson's brother was not produced as a witness. We understand from the record that as an employee of Johnson and his wife, the brother engaged in buying hides for the firm. In this state of the record, do the circumstances exclude the reasonable hypothesis that the hide in question may have been bought from some person other than appellant by Johnson's brother for cash, or that the proprietors themselves had bought such hide from some other person and paid therefor in cash? We think the question must be answered in the negative. The Johnsons were generally engaged in the produce business and bought hides from many people. In the absence of a showing that the number of hides on hand after the last shipment corresponded to the number of sellers evidenced by the checks introduced by the state, it cannot be said that the test of exclusion has been met. In order to sustain a conviction based upon circumstantial evidence the circumstances must exclude every other reasonable hypothesis except that of the guilt of the accused. Branch's Annotated Penal Code of Texas, section 1877. The circumstances show that appellant is probably guilty, but this is not enough. We quote from Branch's Annotated Penal Code of Texas, section 1877, as follows:

"To sustain a conviction it should appear not only that an offense as charged has been committed, but there should also be proof to a degree of certainty greater than a mere probability or strong suspicion tending to establish that the party charged was the person who committed it or was a participant in its commission. There must be legal and competent evidence pertinently identifying the defendant with the transaction constituting the offense charged against him."

Deeming the evidence insufficient, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.