**Raymond DRAGER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 53182.**

Court of Criminal Appeals of Texas.

Sept. 21, 1977.

Kenneth Nolan Tarlton, Amarillo, for appellant.

Jim D. Vollers, State's Atty. and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

This is an appeal from a conviction for theft of cattle under $10,000. The jury assessed punishment at two years' confinement in the Texas Department of Corrections.

The State's evidence was circumstantial. Appellant's only ground of error challenges its sufficiency.

The record reflects that the complaining witness stock farmed in an area about ten miles north of Bovina. He went with his brother to check his cattle around 10 a. m. on April 1, 1975. He noticed a calf was missing. Circumstances revealed that this was not merely an occurrence appropriate for the day. The calf was worth a hundred dollars and he gave no one permission to take it. After searching the pasture for the calf, he noticed some "hay and stuff" by the side of the fence. The fence was along a "turnrow," which was a private road separating this pasture from another. Near the "straw and stuff" there was some "binding string, which is used in tying bales." The complainant also found a wristwatch about "six or eight feet from this hay." "There was hair on the ground there of where, apparently, a calf had been drug, or skidded, or moved." It was black hair and the missing animal was a black calf. The calf

weighed around 250 pounds. The complainant then went back to Bovina and contacted the Sheriff's Department. He gave them the watch. The next morning he found his calf in appellant's father's corral.

Henry Minter, deputy sheriff of Parmer County, testified that he was contacted on April 1, 1975 and informed of the complainant's problem. In response, he picked up the complainant's brother and went to Bovina where he met with the complainant and received the watch and other information about the occurrence from him. Minter and the complainant's brother then proceeded to the scene of the alleged rustling. As they approached the complainant's ranch, they started to turn down a one-lane private road which led to the area of concern, but noticed a vehicle was coming from the opposite direction. Consequently, they stopped to let the approaching vehicle out before they proceeded into the one-lane road.

The approaching vehicle was then recognized by Minter as appellant's "Ford pickup; blue in color, 4-wheel drive, all mud grips on all four tires." Appellant was driving, and his wife, child and brother, Curtis, were with him. Minter stopped the appellant, got out of his car, approached the pickup and spoke with appellant. Minter noticed some twine and "little old sticks of maize butts" or "some kind of butt hay" in the back of appellant's pickup. After conversing momentarily, appellant went on his way. Minter had taken the twine and hay sample into his possession. He and complainant's brother then proceeded to the scene of the alleged offense.

When they got there, Minter testified that ". . . we found a bunch of tracks, pickup tracks, and very few footprints, actually, because it was grass, covered with grass. I found some more butts, and some more twine." The tire tracks ". . . were all mud grips and appeared to be front and back." Minter further testified that:

"Well, the vehicle—as it appeared to me, the fence ran along like this, in this general direction, and it appeared to me that the pickup had backed in here to kind of make a little pocket, and all the action seemed to be right in this area between the pickup and the fence."

Minter took some of the hay and twine found at the scene into his possession. The twine and hay were similar to that taken from the back of appellant's pickup truck.

Minter and the complainant's brother then went to appellant's father's farm. No one was there, but the complainant's brother identified the missing calf there in the corral. They then proceeded to Friona to question the appellant.

On the way into Friona, Minter met and stopped appellant's pickup which was coming from the opposite direction. He testified that appellant was still driving and his wife, child and brother, Curtis, were still with him. Minter testified that he approached the pickup and asked, "Has either one of you guys lost a watch?" To which appellant's wife responded, "Curtis lost his." Minter then said, "Curtis, when did you lose it?" Curtis replied, "Last night." Minter then arrested appellant and his brother.

On cross-examination, Minter testified that he really couldn't identify any footprints at the scene and that there was more than one set of mud grip tire tracks present. Although he could not tell for sure, Minter said his opinion was that a vehicle had been backed up against the fence. Minter also testified that appellant's wife identified the watch as the one belonging to appellant's brother.

Chester Woltmon, the complainant's brother, testified that when he was at the scene of the alleged offense with his brother the twine there "was scattered out"; that when he returned with Deputy Minter ". . . it looked like it had been picked up and, then, was dropped, you know, in kind of a bunch." Also, ". . . there was fresh tracks that we—where we had run over these tracks going out, there was fresh tracks that had been made since we— since Jack (complainant) and I had left that morning."

The appellant did not take the stand nor did he offer any evidence.

In summary, the State proved:

(1) that an offense occurred;

(2) that appellant was at the scene of the offense at a point in time after it had been committed;

(3) that appellant's vehicle may have been there before this time;

(4) that appellant's brother was at the scene of the alleged offense about the time it could have occurred.

There was no evidence of flight when appellant was spotted at the scene of the offense nor did the State prove that the calf was in the possession of the appellant.

"In determining whether circumstantial evidence is sufficient to support a conviction, each case must necessarily be tested by its own facts." *Moore v. State,* 532 S.W.2d 333, 337 (Tex.Cr.App.1976).

"In order to sustain a conviction based upon circumstantial evidence, the circumstances must exclude every other reasonable hypothesis except that of the guilt of the accused." *Reed v. State,* 22 S.W.2d 456, 458 (Tex.Cr.App.1929). Not only must the offense charged be proved to have been committed, ". . . but there should also be proof to a degree of certainty greater than a mere probability or strong suspicion tending to establish that the party charged was the person who committed it or was a participant in its commission." *Id.*

"In ascertaining whether the guilt of the accused has been established to a moral certainty, the appellate court will review the evidence in light of the presumption that the accused is innocent. The court will not presume any acts against the accused that are not shown to have been committed by him. Furthermore, a conviction will not be sustained on appeal if the evidence does not sufficiently establish all material elements of the offense charged." *Culmore v. State,* 447 S.W.2d 915, 916 (Tex.Cr.App.1969), *quoting,* 24 Tex.Jur.2d, Evidence, Section

742, pp. 424–425; *accord, Ysasaga v. State,* 444 S.W.2d 305, 309 (Tex.Cr.App. 1969).

Mere presence at the scene of the crime is not sufficient alone to show guilt. *Moore, supra,* at 337. "The unexplained possession of recently stolen property is always a circumstance from which an inference of guilt arises." *Otts v. State,* 135 Tex.Cr.R. 187, 117 S.W.2d 463, 464 (1938). And while the accused may be convicted of theft without being seen or found in the possession of stolen property, *McNeely v. State,* 117 Tex.Cr.R. 587, 34 S.W.2d 873 (1931, On Motion for Rehearing), the inability of the State to prove possession is a factor which must be considered in circumstantial evidence cases. *Lattimore v. State,* 109 Tex.Cr.R. 318, 4 S.W.2d 552, 553 (1928).

Applying the rules above, we are of the opinion that the evidence does not ". . . point to the guilt of the appellant with the cogency which the law demands to overcome the presumption of innocence and to exclude every reasonable hypothesis except the guilt of the accused." *House v. State,* 20 S.W.2d 792, 794 (Tex.Cr. App.1929, On Motion for Rehearing). The evidence is insufficient.[1] "The circumstances show that appellant is probably guilty, but this is not enough." *Reed, supra,* at 458.

The judgment is reversed and the cause remanded.

---

1. We note that the trial court did not instruct on the law of parties or criminal responsibility, Secs. 7.01, 7.02, V.A.P.C., nor was this theory submitted in the application of the law to the facts. Consequently, the jury could not properly convict under this theory. *See Romo v. State* (No. 52,806, Opinion on Appellant's Motion for Rehearing; delivered May 18, 1977).