William A.J. VOIGHT, Appellant,

v.

STATE of Texas, Appellee.

No. 13–83–054–CR.

Court of Appeals of Texas, Corpus Christi.

Nov. 30, 1983.

Rehearing Denied Dec. 29, 1983.

James M. Whitten, Sinton, for appellant.

Thomas L. Bridges, Dist. Atty., Sinton, for appellee.

Before NYE, C.J., and YOUNG and UTTER, JJ.

## OPINION

NYE, Chief Justice.

This is an appeal from a conviction of aggravated rape. The jury assessed punishment and the trial court sentenced the appellant to twenty years in the Texas Department of Corrections.

This case involves an alleged rape of a six-year old child. Appellant urges in his sole ground of error that the trial court erred in denying his Motion for Instructed Verdict because the state's circumstantial evidence was insufficient as a matter of law to connect the appellant with the commission of the offense of aggravated rape.

Because of the youth of the child involved in this incident, the testimony of all of the witnesses will be reviewed here to get a complete understanding of the events of the evening of the alleged incident. On November 8, 1982, the victim's mother brought the victim and her other child, also an infant, to the home of Vicky Thompson (a friend). Thompson occupied the home with her two children and her boyfriend. The appellant, a friend of Vicky Thompson and her boyfriend, was also present at the house. The victim's mother testified that she left her two children with the appellant while she went to check on her husband, who was in jail. Vicky Thompson's children, a child 6 years old and another 7 years old, were also left at the home with the appellant. The victim's mother testified that she returned to Thompson's home the evening of November 8, 1982 at about 9:30 p.m. "for a little bit," then left the house again and returned about 2:00 a.m. the next morning. When she returned, she found the appellant asleep under the bedcovers. Her child, the victim, was also asleep in the same bed. She testified that the child was naked. Vicky's son was asleep on another bed in the same room. The mother, who testified that she had been drinking, did not notice any bruises or marks on her child in the early morning hours when she picked up the child. She testified that the light was dim, and she could not see too clearly in the light. She testified that she put the child's jeans on and took her home. The child woke momentarily when the mother put her in the car, but went back to sleep. She testified that when she got home she placed the child in bed. The next morning, the mother noticed the child had "lines and red spots" on her neck. The child told her that appellant had done it to her. The mother then took the victim to the doctor that morning.

L———, a seven-year-old male child, testified that he was sleeping in a bed next to a bed where appellant and the victim were lying. He testified that he knew that they were there because he heard them talking. He testified, "Well, he (appellant) said something, 'suck my pean.'" He testified he heard the victim say something about "It's hot" and "It's hot" and "Get off." Later, he admitted that appellant did not use the word "pean" but used instead the word "dick." The 7-year-old boy testified that he had not used that word ("dick") originally because he did not like to use that word.

Dr. Fred Warren testified that on November 9, 1982, he examined the victim. He said there were areas of discoloration on the sides of her neck, areas of bruising, black eyes, areas of hemorrhage between the white portion of the eyes, swelling and tenderness over the left side of her head. On examination of the genitalia, the doctor noted swelling and discoloration to the lips of the vagina. There was evidence of recent interruption of the hymenal ring and serosanguineous blood-tinged discharge from the vagina. He testified that, based upon his physical examination, the sexual organs of the child had been penetrated within 12 hours of his examination. Dr. Warren testified again during the defense part of the case that the victim had told him that appellant had used his hands on her genitals. He further asked her if she had any contact with appellant's penis, uti-

lizing a word familiar to the child's meaning of penis. She shook her head that she did not. The doctor testified that there was a probability of penal penetration, but admitted that there also existed the possibility there was some other means.

Dr. Alexander Lyster testified that he analyzed the slide of a vaginal smear which had been prepared by Dr. Warren during his examination of the victim. He testified that he found sperm. He didn't count the number, but Dr. Lyster said that sometimes in a case such as this he might have to look a long time before he could identify a sperm, but, in this case, he had no trouble finding sperm on the slide.

The victim, six years old at the time of the incident, identified the appellant as the individual who choked her at L——'s house in the bedroom. She testified she was in her clothes, and the appellant was in his clothes. She did not remember if appellant did anything else to her besides choke her.

The definition of rape of a child in TEX. PENAL CODE ANN. § 21.09 (Vernon Supp.1982–1983) in pertinent part reads:

(a) A person commits an offense if he has sexual intercourse with a female not his wife and she is younger than 17 years.

Aggravated rape is defined by TEX.PENAL CODE ANN. § 21.03

(a) A person commits an offense if he commits rape as defined in Section 21.02 of this code or rape of a child as defined in Section 21.09 of this code and he:

(5) the victim is younger than 14 years.

■ The trial court in this case properly instructed the jury on circumstantial evidence. In cases based upon circumstantial evidence, the evidence must be sufficient to exclude beyond a reasonable doubt every reasonable hypothesis except the guilt of the appellant. *Nathan v. State,* 611 S.W.2d 69 (Tex.Cr.App.1981); *Faulk v. State,* 608 S.W.2d 625 (Tex.Cr.App.1980). Every fact need not point directly and independently to defendant's guilt. It is enough if the conclusion is warranted by the cumulative force of all of the incriminating circum-

stances. *Nathan v. State,* 611 S.W.2d at 75. Each case must, of course, be tested by its own facts. *Moore v. State,* 532 S.W.2d 333 (Tex.Cr.App.1976). Circumstantial evidence does not require that the circumstances should to a moral certainty actually exclude every hypothesis that the act may have been committed by another person, but that the hypothesis intended is a reasonable one consistent with the circumstances and facts proved. The supposition that the act may have been committed by another person must not be out of harmony with the evidence. *Nathan v. State,* 611 S.W.2d, at 75; *Jones v. State,* 442 S.W.2d 698 (Tex.Cr.App.1969). The question raised here is whether the evidence proves beyond a reasonable doubt that it was appellant who penetrated the sexual organs of the child.

■ Penetration, like other elements of a crime, may be proved by circumstantial evidence. *Luna v. State,* 515 S.W.2d 271 (Tex. Cr.App.1974). In *Luna,* the victim testified that in the course of being attacked, she fainted. On medical examination, the physician found (intact) sperm in the vaginal vault. The physician testified that the victim had recently had sexual intercourse. The Court of Criminal Appeals held that this alone established the fact of penetration. The same court also upheld a conviction for rape where penetration was proven by circumstantial evidence in *Nilsson v. State,* 477 S.W.2d 592 (Tex.Cr.App.1972). In that case, the prosecutrix did not remember the assault, but she could remember that appellant had "smelly stuff" on a kleenex which made her drowsy and that she was in her living room when she smelled it. This was corroborated by the finding of an open bottle of Trilene near the couch. Medical testimony showed severe injuries, although no positive identification of sperm could be detected. The doctor testified that the injuries were caused by a blunt object and they were of the type that could have been caused by the penis of an adult male. The appellant made a statement to the victim's father that he "had done it to her." The court held that the appellant's statement, in addition to other corroborating

testimony, was sufficient to uphold the conviction.

 There is one additional requirement in a circumstantial evidence case. The state must disprove every outstanding reasonable hypothesis except the guilt of the accused in order for the evidence to be sufficient to support the conviction. In order for a hypothesis to be reasonable, however, it must be raised by the evidence. In order for a reasonable hypothesis to be outstanding, there must be no competent evidence to the contrary. *Nilsson v. State,* 477 S.W.2d at 597.

Here, the victim was a child barely six years old. She testified at trial that the appellant had choked her, but testified that she remembered nothing else. She testified that she had her clothing on, but her mother testified that when she arrived at Thompson's home, the child was lying on the bed unclothed. The uncontroverted medical evidence showed sperm in the child's vagina in easily recognizable numbers. Dr. Warren testified that the child's sexual organs had been penetrated, and that they were probably penetrated by a male penis. Here, while there is no evidence that the child was rendered unconscious by her assailant, the medical testimony elicited at trial clearly shows injuries to her neck, face and shoulders, all of which were recent. The medical testimony, together with the testimony of the lay witnesses, indicates that penetration of the child's vagina did occur.

Appellant raises the hypothesis that Vicky Thompson's boyfriend was in the house for 20 minutes on the morning of November 9, 1982 before the mother went into the bedroom to pick up her children. Vicky Thompson testified, however, that when she and her boyfriend came inside the house, they immediately went to their bedroom and remained together. She testified that neither of them went into the children's rooms. The victim's mother testified when she went in the bedroom twenty minutes later, the child was asleep.

The appellant also hypothesizes that someone else may have entered the home during the 4 ½ hour period in which the children were at Thompson's home. There was no evidence that anyone else entered the house. Such evidence is not considered in law a reasonable hypothesis. The mother testified that she brought the child home, she locked the door and that no one else was in her home.

We hold that the evidence was sufficient for the jury to have found to a reasonable and moral certainty that the appellant committed the offense charged and that the evidence was sufficient that the jury could have reasonably found that every reasonable hypothesis except appellant's guilt was excluded.

The judgment of the trial court is affirmed.