**Lesha Patrice KING, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–85–0383–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

May 29, 1986.

Charles F. Baird, Alan Tanner, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., Kathlyn Giannaula, Harris County Asst. Dist. Atty., Houston, for appellee.

Before SAM BASS, COHEN and DUNN, JJ.

**OPINION**

DUNN, Justice.

This is an appeal from a conviction for theft. The jury assessed punishment at 3 years confinement and a $2500 fine.

The State's evidence was circumstantial, and appellant's sole ground of error challenges its sufficiency.

The complainant, Tom Folmer, testified that he went to a fundraiser for the South Houston Chamber of Commerce at the Hobby Airport Hilton Hotel on the evening of May 11, 1984. He left the fundraiser between 10:00 and 11:00 p.m. and went across the hall to the hotel nightclub, where he was a regular customer. He was also accustomed to wearing expensive jewelry and testified that on that night, his jewelry was worth approximately $17,000. Folmer stated that he and appellant began talking at the bar, but he could not remember who initiated the conversation. Folmer estimated that his alcohol consumption throughout the evening consisted of 4 to 6 drinks at the fundraiser and 1 drink every 30 to 45 minutes at the nightclub until he left around 1:30 a.m. He could not remember if he had eaten lunch or dinner that day. He described himself as a heavy social drinker and explained that it was customary for him to drink large quantities of alcohol on the weekends. Folmer testified that he and a group of his friends, including his girlfriend, stayed at the club with appellant drinking and listening to the band for several hours.

Folmer testified that he and appellant left the nightclub in his automobile between 1:00 and 1:30 a.m. and drove to his home. He could not remember whether he invited her to come with him or whether it was by "mutual agreement." In the parking lot of his apartment complex, Folmer

began to feel wary and placed his wallet under the car's front seat. After Folmer and appellant entered his apartment, appellant went to the kitchen to get two beers while Folmer put on a video tape. Folmer testified that the last thing he remembered was drinking some of his beer and that he could not remember anything else until he woke up in his bed at 4:00 p.m. the next afternoon. He did not remember going to his bedroom, and stated that, upon awakening, it was very difficult for him to move or think. According to Folmer, he did not usually feel this way when he had a hangover, and he assumed that he had been drugged. At this time, he noticed that all the jewelry he had worn the night before was missing. After Folmer called the police, he went to his car and found it to be unlocked, with his keys and wallet lying on the floorboard. Everything had been removed from his wallet, including his driver's license, credit cards, and approximately $1,000 in cash. The initial police report stated that the stolen property consisted of jewelry, credit cards, 2 cameras, and a video recorder. The cameras and video recorder were subsequently found by Folmer at his place of business.

Houston Police Sergeant Billy Johnson testified that he was familiar with a scheme to commit theft in which the usual victim was a male wearing expensive jewelry and drinking in a bar. In the typical case, a woman would engage the victim in conversation and slip a small dose of a barbituate into his drink. After the victim had taken the woman home with him, she would give him one final drink containing a large dose of the drug, and he would lose consciousness. Sergeant Johnson's testimony did not show a connection between appellant and this type of scheme nor was there any evidence, other than Folmer's own speculation, that he had been drugged. Folmer stated that he tried to give the remainder of the can of beer for analysis of its contents to the officer who responded to his call on May 12, but that the officer did not take it.

Folmer testified that, in September of 1984, he saw the woman he had taken home with him on May 12, four months before. He observed her for about an hour and tried to follow her when she left, but lost her in the crowd. He returned to the bar and asked the bartender for a copy of the American Express receipt she had left in payment for her drink. This information was given to Sergeant Johnson.

After determining that appellant was the owner of the American Express card, Sergeant Johnson contacted her and went to her residence at her invitation. With her cooperation, he obtained her photograph and composed a photograph spread. Folmer and another witness, Chuck Hyde, tentatively identified appellant as the woman they had seen on the night of May 11. Folmer testified that he remembered the woman he took to his home as wearing more makeup than that shown on appellant in the photo spread. Sergeant Johnson then obtained appellant's driver's license photo, which showed her wearing more makeup, and composed a second photograph spread. Folmer positively identified appellant from the second group of photographs, and Hyde made a second tentative identification.

At trial, appellant was positively identified by Folmer, Hyde, another friend of Folmer's, and Folmer's girlfriend. The manager of the nightclub, who had been in and out of the club all evening on May 11, and who had seen the woman with Folmer both inside the bar and outside in the hallway, failed to identify appellant.

Appellant testified that she was in the nightclub at the Hilton Hotel on September 13, 1984, and that she paid for her drink with an American Express card. Approximately 3 weeks later, she received a phone call from Sergeant Johnson asking if he could meet with her. At this meeting, appellant referred to her personal calendar, which showed that she had been at home on the evening of Friday, May 11, 1984, entertaining a friend. This friend testified that he could not remember the exact night he saw appellant, although he did remem-

ber seeing her on a Friday night around the middle of May 1984.

The standard for appellate review is the same for circumstantial evidence cases as it is for direct evidence cases. The evidence is to be viewed in the light most favorable to the prosecution, and the relevant question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Carlsen v. State,* 654 S.W.2d 444 (Tex. Crim.App.1983).

Under Tex. Penal Code Ann. sec. 31.03(a) (Vernon Supp.1986), the essential elements of the offense of theft are that a person:

1. unlawfully appropriates property;
2. with intent to deprive the owner.

In determining whether circumstantial evidence is sufficient to support a conviction, each case must necessarily be tested by its own facts. *Moore v. State,* 532 S.W.2d 333 (Tex.Crim.App.1976). Viewing the evidence in the light most favorable to the prosecution, the State showed:

1. that an offense occurred;
2. that appellant was at the scene of the offense at some point in time before it was committed.

 Mere presence in the vicinity of a crime is not alone sufficient to sustain a conviction. *Moore,* 532 S.W.2d at 337. Even when presence is coupled with flight, the evidence does not support a finding of guilt. *Id.* In the present case, there is no evidence of flight. Appellant made no attempt to flee after Sergeant Johnson informed her that she was suspected of theft. The record shows that she agreed to meet with him at her home, that she allowed him to photograph her for use in a photograph spread, and that she waited for him to return to his office and fetch his forgotten camera. Sergeant Johnson's report described her as "cooperative." She remained available for the investigation from September of 1984 to January of 1985, when the theft charge was filed.

 Further, none of Folmer's property was found with appellant. Although the accused may be convicted of theft without being seen or found in the possession of stolen property, *McNeely v. State,* 117 Tex. Crim. 587, 34 S.W.2d 873 (1931), the inability of the State to prove possession is a factor that must be considered in circumstantial evidence cases. *Lattimore v. State,* 109 Tex.Crim. 318, 4 S.W.2d 552, 553 (1928). The State contends that the facts of this case are similar to those of *McNeely,* 34 S.W.2d at 873. The complainant in *McNeely* allowed a stranger to spend the night with him. In the morning, the complainant's car was gone, and so was the stranger. However, additional facts in *McNeely* that pointed to guilt were the defendant's use of an assumed name and the sighting of the defendant in a Ford roadster, apparently similar to the complainant's car, during the month the complainant's car was stolen. In finding the evidence sufficient to support McNeely's conviction, the court found it worthwhile to note that "no sort of explanation was offered" by the defendant.

In *Drager v. State,* 555 S.W.2d 743 (Tex. Crim.App.1977), the Court of Criminal Appeals cited *McNeely,* but did not find it to be controlling in the absence of evidence of flight or proof that the stolen property was in the possession of the defendant. *Id.* at 745. The evidence in *Drager* showed that the defendant was in the vicinity of the offense at some point in time after it occurred.

The State also relies on *Voight v. State,* 662 S.W.2d 420 (Tex.App.—Corpus Christi 1983, no pet.), to rebut the hypothesis that someone else could have entered Folmer's apartment, stolen his jewelry, and located his wallet in the 15–hour period that he was asleep. However, in *Voight,* an aggravated rape case, testimony of the complainant's mother established that no one except the defendant and 4 small children were in the house when she locked the door and left at 9:30 p.m. When the complainant's mother returned at 2:00 a.m., she found the defendant in bed with her child. Both were naked. There was no evidence that anyone entered the house by any means between 9:30 p.m. and 2:00 a.m. The complainant's

testimony also linked the defendant with the assault.

■ In the present case, Folmer slept soundly for 15 hours and did not awake until 4:00 p.m. the next afternoon. There is no evidence that the apartment was locked. He could not positively remember locking his car, or state what he did with his keys after entering his apartment. Thus, the evidence did not show that only appellant could have had access to Folmer's apartment, jewelry, car, and billfold during this 15–hour period. By Folmer's own testimony, he could not have known what happened during the period that he was asleep. We find that a time lapse of 15 hours, especially in a large apartment complex, is sufficient to allow for the intervening acts of third parties. Although appellant's presence at Folmer's apartment creates a suspicious circumstance against her, there is nothing to exclude the possibility that someone else committed the theft. In so holding, we follow the long-standing rule that the mere presence of an accused in the vicinity of a crime is insufficient to sustain a conviction. *See Drager,* 555 S.W.2d at 743; *Phea v. State,* 150 Tex. Crim. 77, 199 S.W.2d 160 (1947); *Bufford v. State,* 148 Tex.Crim. 50, 184 S.W.2d 843 (1945); *Jaso v. State,* 144 Tex.Crim. 492, 164 S.W.2d 695 (1942); *Kahn v. State,* 143 Tex.Crim. 307, 152 S.W.2d 761 (1941).

The essential elements of the offense of theft are not established beyond a reasonable doubt. Appellant's sole ground of error is sustained.

The judgment of the trial court is reversed, and a judgment of acquittal is entered.