Opinion issued June 15, 2006









Opinion issued June 22,
2006




 

 

 

 

 

 













 

     

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-05-00725-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



BEAU JOHN MALONEY, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 



On Appeal from the 182nd District Court

Harris County, Texas

Trial Court Cause No. 983422

 








 



MEMORANDUM OPINION

 

          A jury found appellant, Beau John
Maloney, guilty of aggravated robbery[1]
and assessed punishment at life imprisonment. 
On appeal, Maloney contends the evidence is legally and factually
insufficient to support his conviction. 
We hold that sufficient evidence supports the conviction and therefore affirm.

Facts

          In
March 2004, Juli Graves, an advertising executive, drove to Kubo’s Sushi Bar in
Houston for a client meeting.  She parked
on the second level of the Rice Village Arcade parking garage and remained in
her car for approximately five minutes to finish a telephone conversation with
a coworker.  While still on the telephone,
she opened the driver’s side door, stuck her foot out, and reached over to the
passenger’s seat to retrieve her receipt book.

When she turned to exit the car, she
saw a man later identified as Maloney standing next to her driver’s side door.  Startled, Graves ended her call and
apologized to Maloney for blocking his path. 
Graves attempted to close her car door, but Maloney said “no” and placed
his fingers over the top of the door so she could not close it.  Maloney then ordered her to “scoot over and
you won’t get hurt.”  Graves responded
that she was unable to climb over the center console because the parking brake
was in the way.

          Maloney
then pulled out a small black revolver and pointed it at Graves’s face.  Graves managed to climb over the console into
the passenger’s seat while Maloney, still pointing the gun in her direction,
sat down in the driver’s seat.  Graves
attempted to open the passenger’s side door, but it was locked.  Maloney commanded her, “Don’t open the
door.  Don’t get out.”

Maloney tried to place the gun on her
body, but Graves was able to push it away. 
At the same time, she succeeded in unlocking the passenger’s side door.  As she slipped out of the car, Graves saw her
purse and instinctively reached for it. 
Maloney yelled “no” and fired a shot at Graves while he lunged for her
purse.  The bullet entered Graves’s arm,
passed through both of her breasts, and exited her other arm, narrowly missing
her heart but injuring her median nerve. 
Graves screamed and ran to her client’s restaurant, where she was assisted
by customers and employees until an ambulance arrived.

          Caroline
Awe-Husky had just finished eating lunch at a restaurant in the Rice Village
Arcade and was walking through the bottom level of the parking garage with her
husband when she heard a gunshot and a woman’s screams.  Shortly thereafter, she saw Maloney running
down the stairwell with a purse under his arm. 
Maloney exited the garage and ran toward Istanbul Restaurant, after
which Awe-Husky lost sight of him.

          Nicholas
Gasparis and George Hristopoulos were eating lunch at Istanbul Restaurant when
they heard a big bang and screams from the vicinity of the parking garage.  They then saw Maloney exiting the parking
garage at a quick pace.  Maloney
exchanged words with a security guard and fled the scene.

          Daniel
Lopez, the security supervisor for the Rice Village Arcade, saw Maloney walking
out of the parking garage, carrying a handbag. 
Lopez was unaware at the time that there had been a shooting in the
garage, but thought it odd that a male was carrying a purse.  He therefore made a U-turn in his golf cart
in an attempt to follow Maloney.  Maloney
saw Lopez make the U-turn and quickened his pace, circumventing a Miller Light
delivery truck before reaching the sidewalk. 
Lopez stopped Maloney and asked him whose purse he was carrying.  Maloney responded that it belonged to his
wife.  Lopez told Maloney that he wanted
to talk to him “a little bit longer,” but Maloney broke into a run and managed
to escape.

          Jose
Villarreal, a speed driver for the Miller Light Company, was delivering beer to
a restaurant in the Rice Village Arcade when he heard a gunshot.  Shortly thereafter, he saw Maloney exit the
parking garage and flee on foot.

          Officer
T. Coy Morales arrested Maloney one month later at a rest stop in Kerrville.  He recovered a Charter Arms .38 revolver from
the center console of the truck in which he found Maloney sleeping.  The State’s ballistics expert testified that
the bullet found at the scene of the shooting was fired by the Charter Arms .38
revolver found in Maloney’s possession at the time of his arrest.[2]  The police never recovered Graves’s purse.

          After
Maloney’s arrest, Officer Robert Sherrouse conducted a photographic line-up,
from which Graves, Lopez, Gasparis, and Hristopoulos independently identified
Maloney as the assailant.  The next day,
Graves, Lopez, and Gasparis also independently identified Maloney from a live
line-up.  At trial, Graves, Lopez,
Gasparis, Hristopoulos, Awe-Husky, and Villarreal made in-court identifications
of Maloney.

Analysis

          On
appeal, Maloney contends the evidence is legally and factually insufficient to
support his conviction for aggravated robbery.

Standards of Review

          In
a legal sufficiency review, we view the evidence in the light most favorable to
the verdict and decide whether a rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Escamilla v. State, 143 S.W.3d 814, 817
(Tex. Crim. App. 2004).  Although our
analysis considers all of the evidence presented at trial, we may not re-weigh
the evidence or substitute our judgment for that of the fact-finder.  King v. State, 29 S.W.3d 556, 562
(Tex. Crim. App. 2000).

          In
a factual sufficiency review, we view all of the evidence in a neutral light,
and we set the verdict aside only if “proof of guilt is so obviously weak as to
undermine confidence in the jury’s determination, or the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof.”  Vodochodsky v. State, 158 S.W.3d 502, 510
(Tex. Crim. App. 2005) (internal quotation marks omitted).  In conducting such a review, we consider all
of the evidence weighed by the jury, comparing the evidence that tends to prove
the existence of the elemental fact in dispute to the evidence that tends to
disprove it.  Id.  We may disagree with the jury’s determination
even if probative evidence exists to support the verdict, but we should avoid
substituting our judgment for that of the fact-finder.  Id. 
The jurors are the exclusive judges of the facts, the credibility of the
witnesses, and the weight to be given to their testimony.  Sharp v. State, 707 S.W.2d 611, 614
(Tex. Crim. App. 1986).

Aggravated Robbery

          A
person commits aggravated robbery if he commits robbery and causes serious
bodily injury to another, or uses or exhibits a deadly weapon.  Tex.
Pen. Code Ann. § 29.03(a)(1)–(2) (Vernon 2003).  A person commits robbery if, in the course of
committing theft and with intent to obtain or maintain control of the property,
he intentionally or knowingly threatens or places another in fear of imminent
bodily injury or death.  Id. §
29.02(a)(2).  “In the course of
committing theft” means conduct that occurs in an attempt to commit theft,
during the commission of theft, or in immediate flight after the attempt or
commission of theft.  Id. §
29.01(1).  A person commits theft if he
unlawfully appropriates property with intent to deprive the owner of the
property.  Id. § 31.03(a) (Vernon
Supp. 2005).  A jury may infer intent from
the defendant’s conduct and surrounding circumstances.  LaPoint v. State, 750 S.W.2d 180, 182
(Tex. Crim. App. 1986); Ford v. State, 152 S.W.3d 752, 756 (Tex. App.—Houston
[1st Dist.] 2004, pet. ref’d).

Sufficiency of the Evidence

          Maloney
contends that, although the evidence is sufficient to support a conviction for
aggravated assault, it is neither legally nor factually sufficient to support a
conviction for aggravated robbery because the State did not prove that he shot
Graves in the course of committing theft. 
He acknowledges that Graves’s purse was missing after the incident and that
some witnesses testified they saw him carrying a purse as he left the scene,
but he urges that the State did not establish that the purse he was carrying
belonged to Graves.  He also notes that the
police did not find Graves’s purse or its contents in his truck at the time of
his arrest.

          These
contentions are without merit.  Maloney
forced his way into Graves’s car by holding her at gunpoint.  When he saw Graves reach for her purse as she
slipped out of the car, he yelled “no” and shot her while simultaneously lunging
for her purse.  Graves testified that her
purse was brown leather with brightly colored embroidered flowers on one side.  The descriptions given by the witnesses who
saw Maloney fleeing with a purse were remarkably similar to Graves’s
description of the purse.  Specifically,
Lopez testified that “[t]he handbag was brown and leather, short strap,
multiple color, the design on the front flap of the purse. . . .  [T]his handbag got my attention because it
was made out of leather.  Also, . . .
because it had multiple colors and I myself am a leather craftsman.”  Similarly, Awe-Husky testified that the purse
“had a design on the front.”  From this
testimony, Maloney’s actions, and the surrounding circumstances, a jury
reasonably could have determined that the purse Maloney was seen carrying as he
fled the scene belonged to Graves.  See,
e.g., Caldwell v. State, 943 S.W.2d 551, 552–53 (Tex. App.—Waco
1997, no pet.) (in bank robbery case, rejecting appellant’s assertion that he
could not have committed aggravated robbery because he left money bag in bank,
where witness testified that she saw appellant running from bank carrying bag
matching description of bag in which teller had placed money).

          Nor
is it determinative that the police did not find Graves’s purse or any of its
contents in Maloney’s truck at the time of his arrest.  See Petro v. State, 176 S.W.3d 407,
408, 410 (Tex. App.—Houston [1st Dist.] 2004, pet. ref’d) (holding that
evidence was legally and factually sufficient to support appellant’s aggravated
robbery conviction, even though police did not find complainant’s purse in
appellant’s possession at time of his arrest). 
“[T]he accused may be convicted of theft without being seen or found in
the possession of stolen property.”  King
v. State, 712 S.W.2d 799, 801 (Tex. App.—Houston [1st Dist.] 1986, pet.
ref’d); see also Chaney v. State, 474 S.W.2d 711, 712 (Tex. Crim. App.
1972) (“Appellant contends that the evidence was insufficient in that there was
no showing that he was found in possession of the property alleged to have been
stolen.  Such is not required.”).  Moreover, a jury reasonably could have
determined that the month-long lapse between the date of the robbery and the
date of the arrest gave Maloney sufficient time to dispose of the purse and its
contents.  See Petro, 176 S.W.3d
at 410 (“A reasonable jury could have rationally determined that the 30-minute
time lapse between the time of the offense and the time of appellant’s arrest
allowed appellant sufficient time to dispose of any physical evidence that may
have connected him to the offense.”).

          Viewed
in the light most favorable to the verdict, we conclude that the evidence was
legally sufficient for a rational jury to find that Maloney shot Graves in the
course of committing theft.  Viewed in a
neutral light, we hold that the evidence is not so weak that the verdict is
clearly wrong and manifestly unjust.  We
further conclude that the contrary evidence is not so strong that the standard
of proof beyond a reasonable doubt could not have been met.  Accordingly, we hold that the evidence is
factually sufficient to support Maloney’s conviction.

Conclusion

          We
conclude that the evidence is legally and factually sufficient to support the
conviction for aggravated robbery.  We
therefore affirm the judgment of the trial court.

 

 

                                                          Jane
Bland

                                                          Justice

 

Panel consists of Justices Keyes,
Alcala, and Bland.

Do not publish.  Tex.
R. App. P. 47.2(b).











[1] See Tex. Pen. Code Ann.
§ 29.03 (Vernon 2003).





[2] During the punishment phase, the State presented
evidence linking the same revolver to a murder that had occurred at a Chevron
gas station located near the Rice Village Arcade two weeks after the incident
involving Graves.