# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-20-00146-CR
## NO. 03-20-00147-CR

---

**Jacob Davidson, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 167TH DISTRICT COURT OF TRAVIS COUNTY**
**NOS. D-1-DC-19-301991 & D-1-DC-19-301992**
**THE HONORABLE P. DAVID WAHLBERG, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Jacob Davidson was convicted after a bench trial of two counts of burglary of a building and sentenced to eighteen months' imprisonment in both counts. *See* Tex. Penal Code §§ 12.35, 30.02. Davidson was alleged to have stolen clothing belonging to two students from inside a laundry facility at St. Edward's University (the "University") in early October 2019. On appeal, Davidson challenges the sufficiency of the evidence supporting his convictions. We will affirm the trial court's judgments of conviction.

## BACKGROUND

In early October 2019, several female students who were living on campus at the University reported that their clothing had been taken from the same laundry facility. The first student was India Wentz. Wentz took her clothes to the laundry facility, used the code to enter the locked door, and returned to her room between laundry cycles. When Wentz went back to

the facility to gather her clothes from the dryer, she observed inside the laundry room a white man wearing a white t-shirt and gym shorts whom she did not recognize. Wentz noticed near the facility a white car with a St. Edward's sticker on it and a graduation tassel on the rearview mirror. After collecting her clothes and returning to her room, Wentz noticed that all her underwear that she had washed were missing.

Also in early October 2019, Caroline Kirschner, Melissa McNeil, and Madison McElwee had similar experiences. After collecting her clothes from the same facility's dryers, Kirschner found some of her underwear and other clothing items that she had just washed missing. When McNeil was returning to her room after finishing her laundry, she noticed a white man wearing basketball shorts and a white t-shirt whom she did not recognize. McNeil later discovered that some of her underwear, sports bras, and other clothing that she had washed were missing. When McElwee went to the laundry facility, she noticed a white man wearing basketball shorts and a plain t-shirt in the facility. After collecting her clothes from the dryer and returning to her room, McElwee noticed that ten pairs of her underwear that she had washed were missing and called the campus police to report the incident.

A few days later, another student at the University, Emily Tran, went to the same laundry facility to wash her clothes. Having heard that items of clothing had been taken from the facility, Tran decided to wait in the facility until her clothes were done. While waiting, Tran saw a man wearing a wig, shorts, and a t-shirt enter the laundry room by climbing in through the window. After the man saw Tran, he ran out the front door. Tran took pictures of the individual leaving the facility and heading towards a white car.

Approximately two weeks after her clothes went missing, Wentz noticed the same white car parked near the laundry facility that she had seen the day that her clothing disappeared.

Wentz later noticed a man wearing a wig and women's clothing getting into that car. Wentz called the campus police to report what she had seen, and police officers were dispatched to the scene. One of the responding officers was Officer Brian Everette. By the time Officer Everette arrived at the scene, the man had left the area. After talking with Wentz, Officer Everette reviewed photos taken from a motion-activated camera facing the door to the facility that the University had installed after receiving complaints about missing clothing. Officer Brandon Swillinger also responded to the call and reviewed the photos. The photos showed a white man wearing a wig and a white and blue shirt and showed the man walking towards the facility and then back to a white car. After reviewing the photos, Officer Everette decided to park near the facility to see if the car and driver returned.

Later that day, Wentz decided to drive to the laundry facility to see if the white car was there. On her way to the facility, Wentz noticed the same car being driven on campus. Wentz followed the vehicle, called the campus police, and provided to the police the vehicle's license-plate number. While parked near the laundry facility, Officer Everette noticed a white car being driven by an individual wearing a wig and the same type of shirt depicted in the photographs that he had looked at earlier. Officer Everette followed the vehicle and initiated a traffic stop after noticing that the vehicle's registration sticker had expired. The car had the same license-plate number as the vehicle Wentz described. When Officer Everette approached the vehicle, he noticed a large pile of women's underwear in the backseat. The driver identified himself as Davidson. After dispatch informed Officer Everette that Davidson had an outstanding warrant, Officer Everette arrested him. Officer Swillinger also responded to the 911 call, went to the location of the traffic stop, photographed the items in the car, and arranged for the car to be towed.

3

After his arrest, Davidson was charged with two counts of burglary of a building. The first indictment contained allegations pertaining to McElwee, and the second indictment contained allegations pertaining to Kirschner. During the trial, Wentz, McElwee, Kirshner, McNeil, Tran, Officer Everette, and Officer Swillinger all testified regarding the events summarized above leading up to Davidson's arrest. In addition, Wentz testified that the person the police pulled over looked like the same person whom she first saw in the laundry facility dressed in men's clothing and later saw near the facility wearing women's clothing and a wig. Further, Wentz related that the white car that the police pulled over was the same one that she had seen near the facility on the two prior occasions. Moreover, Wentz admitted that she did not see the man inside the facility carrying any clothing and that she was unable to identify any of her stolen property from photographs taken by the police.

McElwee testified that she did not see the man in the laundry facility carrying any underwear. McElwee explained that the police showed her photographs of underwear found in the white vehicle. McElwee testified that she identified three pairs of underwear as being hers and recognized those by their color and style but admitted that it was hard to identify the underwear because the underwear "were all piled up" in the photographs. Similarly, McNeil testified that she looked at photographs of the underwear found in the back seat of the white car and identified some of her missing underwear. Kirschner related that she looked at photographs of the clothing found in the car but admitted that she was not able to identify any of her missing clothing. Wentz, McElwee, McNeil, and Kirschner all testified that they did not give Davidson permission to be in the laundry facility or to take their clothing. The Director of Housing Operations for the University explained that its laundry facilities are not open to the public, that the facilities are designated for student use, that students are given an access code for those

4

facilities, that the University's policies require any guests to be escorted by a currently enrolled student, and that Davidson did not have permission to be inside any laundry facility.

Officer Everette testified that the clothing worn by the person depicted in the photos taken from the camera near the facility matched the clothing that Davidson was wearing during the traffic stop. The photographs taken from the camera were admitted into evidence during Officer Everette's testimony. In addition, a recording of Officer Everette's interaction with Davidson was admitted into evidence and was consistent with Officer Everette's testimony. During his cross-examination, Officer Everette admitted that he was no longer a police officer and had been charged with a felony offense.

Officer Swillinger testified regarding the traffic stop and identified Davidson in court as the person who drove the white car. Officer Swillinger explained that he found multiple pairs of women's underwear and sports bras, photographed those items, and showed some of the students the photographs; however, Officer Swillinger admitted that it was difficult for some of the students to determine if any of the clothing belonged to them because the items in the photographs "were bunched up" and that he should have separated them for identification purposes. Officer Swillinger testified that he did not collect the clothing for evidence and left the items in the car.

During the trial, the State called as a witness Davidson's roommate at the time of the offenses. In her testimony, the roommate stated that she owns the white car that Davidson was driving on the night he was arrested, that she had allowed him to drive the car that day, and that the car had a St. Edward's University sticker on it and a graduation tassel on the rearview mirror. While testifying, the roommate explained that the car contained no underwear when she lent it to Davidson. Further, the roommate testified that Davidson sometimes dresses in women's

5

clothing, brought women's clothing with him when he moved into her home, and had bags of women's underwear.

After the State finished presenting its case, Davidson elected to testify. In his testimony, Davidson admitted that he drove his roommate's car to the University and that he was familiar with the laundry facility in question. However, Davidson testified that he drove to the University and hung out around the laundry facility to potentially meet romantic partners, and he denied ever going inside the laundry facility and denied taking items of clothing from inside the facility. Although Davidson acknowledged that there were items of women's clothing inside the car, he explained that he purchased those items from Goodwill after his roommate agreed to let him borrow the car. During his cross-examination, Davidson admitted that he had previously been convicted of the felony offenses of burglary of a habitation and enticing a child. Additionally, Davidson admitted that he initially told police that he had just been released from the hospital and was on morphine at the time of the traffic stop even though he had been released from the hospital days earlier, that he lied to the police by telling them that his roommate was a current student at the University even though she had graduated months earlier, and that he lied to the police by stating that he was just driving around waiting for his friend to get out of work.

After considering the evidence presented at trial, the trial court found Davidson guilty of both counts of burglary.

**STANDARD OF REVIEW**

In this case, Davidson challenges the sufficiency of the evidence supporting his convictions for burglary. "Evidence is sufficient to support a criminal conviction if a rational [factfinder] could find each essential element of the offense beyond a reasonable doubt." *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*,

6

443 U.S. 307, 319 (1979)). In making this determination, "[w]e view the evidence in the light most favorable to the verdict and consider all of the admitted evidence, regardless of whether it was properly admitted." *Id*. The factfinder "is the sole judge of credibility and weight to be attached to the testimony of the witnesses." *See id*. Factfinders "can draw reasonable inferences from the evidence so long as each inference is supported by the evidence produced at trial," *see id*., and are "free to apply common sense, knowledge, and experience gained in the ordinary affairs of life in drawing reasonable inferences from the evidence," *see Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). "When the record supports conflicting inferences, we presume that" the factfinder "resolved the conflicts in favor of the verdict and defer to that determination." *Merritt v. State*, 368 S.W.3d 516, 525-26 (Tex. Crim. App. 2012).

Appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Appellate courts also must bear in mind that "direct and circumstantial evidence are treated equally" and that "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "can be sufficient" on its own "to establish guilt." *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). The evidence is legally insufficient if "the record contains no evidence, or merely a 'modicum' of evidence, probative of an element of the offense" or if "the evidence conclusively establishes a reasonable doubt." *Id*. at 107 (quoting *Jackson*, 443 U.S. at 320).

Under the terms of the Penal Code, a person commits the offense of burglary of a building "if, without the effective consent of the owner, the person . . . enters a building . . . and

7

commits or attempts to commit a . . . theft." Tex. Penal Code § 30.02(a). Although no mental state is set forth in the statute, the Court of Criminal Appeals has explained that the entry must be intentional or knowing. *DeVaughn v. State*, 749 S.W.2d 62, 64 n.3 (Tex. Crim. App. 1988); *see* Tex. Penal Code § 6.03. A person commits theft "if he unlawfully appropriates property with intent to deprive the owner of property," and appropriation is unlawful if "it is without the owner's effective consent." Tex. Penal Code § 31.03(a)-(b). An "'[o]wner'" is a person who "has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor." *Id.* § 1.07(a)(35). "'Consent' means assent in fact, whether express or apparent," and "'[e]ffective consent' includes consent by a person legally authorized to act for the owner." *Id.* § 1.07(a)(11), (19). The first indictment alleged that Davidson intentionally or knowingly entered a building without McElwee's effective consent and committed theft. The second indictment alleged that Davidson intentionally or knowingly entered a building without Kirschner's effective consent and committed theft.

## DISCUSSION

On appeal, Davidson contends that the evidence presented at trial was insufficient to support his burglary convictions. When presenting this claim, Davidson highlights the testimony at trial demonstrating that Officer Everette was no longer a police officer and had been charged with a felony offense and that Officer Swillinger did not collect as evidence any of the items of clothing found in the car and did not separate the items of clothing for identification purposes. Further, Davidson emphasizes that Kirschner was unable to identify in the photographs of the car's interior any items of clothing belonging to her. Next, Davidson points to portions of McElwee's testimony in which she admitted that it was difficult to ascertain whether any of the underwear in the back of the car belonged to her because the photographs taken by the police

8

showed underwear stacked on top of each other. Moreover, Davidson refers to portions of his roommate's testimony in which she stated that he possessed women's clothing, including bags of women's underwear, and argues that it is reasonable to conclude that he owned women's clothing before the alleged burglaries occurred and that he owned underwear like the types McElwee testified belonged to her. For these reasons, Davidson asserts that the State failed to present evidence sufficient to support his convictions.

As an initial matter, we note that no evidence was presented establishing that Officer Everette's criminal charges stemmed from any action that he took in this case or that he was somehow disciplined for his actions in this case. Moreover, his interaction with Davidson was limited and was captured by his body camera, and his testimony was corroborated by other witnesses and by the photographs admitted into evidence. Furthermore, as set out above, sufficiency challenges consider all the evidence presented at trial regardless of whether it was rightly or wrongly admitted, *see Stahmann*, 602 S.W.3d at 577, and to the extent that Davidson is arguing that Officer Everette's conviction undermined his credibility, we presume that the factfinder resolved any conflicting inferences in favor of conviction and defer to that resolution, *see Merritt*, 368 S.W.3d at 525-26.

Furthermore, evidence was presented during the trial from which the trial court could have reasonably inferred that Davidson entered the laundry facility without the effective consent of the owner. McElwee testified that in early October 2019 she saw a white man wearing basketball shorts and a plain t-shirt at the laundry facility. Similarly, McNeil testified that in this same general time frame she saw near the facility a white man wearing a t-shirt and basketball shorts. Additionally, Wentz related that she saw a white man wearing a t-shirt and gym shorts inside the facility around that same time, that she saw the same individual near the

9

facility approximately two weeks later wearing a wig, and that the man whom she saw later that day driving the white car on campus and being pulled over by the police was the same person whom she saw in the laundry facility. *Cf. Mayes v. State*, Nos. 03-10-00101—00102-CR, 2011 WL 1005331, at \*10 (Tex. App.—Austin Mar. 18, 2011, no pet.) (mem. op., not designated for publication) (observing in sufficiency review that factfinder could have "credited the numerous similarities between the victims' descriptions of the" offender). Moreover, Officer Everette explained that the driver of the car identified himself as Davidson during the traffic stop, and Davidson admitted that he drove the white vehicle on the night of his arrest and would hang around and was familiar with the laundry facility. Photographs of an individual wearing a wig and walking between a white vehicle and the laundry facility on the day Davidson was arrested were admitted into evidence. In their testimonies, Officers Everette and Swillinger both explained that the person depicted in those photos was the same person who was driving the white car and was arrested.

Moreover, the Director of Housing Operations for the University explained that the laundry facilities are designed for use by students, that the facilities are not open to the public, that the facilities have a coded lock on the door, that students are given the code to enter the facilities, and that Davidson did not have permission to use or enter any of the laundry facilities. *Cf. Lee v. State*, 442 S.W.3d 569, 580 (Tex. App.—San Antonio 2014, no pet.) (explaining that "[t]he testimony of an owner that she did not give permission to enter . . . is sufficient to establish the absence of effective consent"). In addition, Wentz, McElwee, McNeil, and Kirschner all testified that they were students at the University and that they did not give Davidson permission to enter the laundry facility. *Cf. Morrow v. State*, 486 S.W.3d 139, 164 (Tex. App.—Texarkana 2016, pet. ref'd) (commenting that any person who has greater right to

10

property than defendant can be considered owner under Penal Code and that multiple people may be considered owners of property).

Furthermore, Tran testified that a few days after students noticed that their clothing had gone missing, she observed a man wearing a wig enter the laundry facility by coming through the window rather than entering through the locked door. *See Gear v. State*, 340 S.W.3d 743, 744 (Tex. Crim. App. 2011) (determining that reasonable factfinder could infer that defendant "intended to commit theft when he attempted to enter the complainant's home through the broken window"); *Nutall v. State*, 722 S.W.2d 545, 547 (Tex. App.—Houston [14th Dist.] 1987, no pet.) (noting that entering building through window is indicative of intent to commit burglary). Tran also explained that the man immediately left the facility once he saw her. *See Alba v. State*, 905 S.W.2d 581, 586 (Tex. Crim. App. 1995) (noting that evidence of flight is "a circumstance from which an inference of guilt may be drawn"). Finally, photos taken by Tran were admitted into evidence and showed a white individual leaving the facility and heading towards a white car resembling the one that Davidson was driving on the night that he was arrested, and Davidson admitted during his testimony that he was the person depicted in the photos.

During the trial, evidence was also presented from which the trial court could have reasonably determined that Davidson committed the offense of theft while inside the laundry facility. Although Officer Swillinger did not collect any clothing from the car or separate the items when taking photographs and although McElwee admitted that it was difficult to identify which underwear were hers from the photos of the inside of the white car, she testified that she recognized in those photos several of her underwear that disappeared after she took them to the laundry facility in early October 2019. *See Dixon v. State*, 43 S.W.3d 548, 553 (Tex.

11

App.—Texarkana 2001, no pet.) (determining that evidence was sufficient to support conviction for burglary, in part, where victim testified that recovered property belonged to her). Similarly, McNeil also testified that she identified in the photographs some of her underwear that disappeared after she took them to the facility in early October 2019. Moreover, approximately two weeks after the students' clothing went missing, Davidson was seen driving the white car with numerous underwear in the backseat, including underwear that McElwee and McNeil testified belonged to them, and Davidson's roommate and owner of the car testified that she did not place any underwear in the car. *Cf. Troupe v. State*, No. 03-11-00341-CR, 2013 WL 3791429, at *5 (Tex. App.—Austin July 18, 2013, no pet.) (mem. op., not designated for publication) (noting when determining that evidence was sufficient to support burglary conviction that defendant was driving car containing stolen property).

The possession of stolen property can warrant an inference of guilt if "the possession was personal, recent, and unexplained." *Rollerson v. State*, 196 S.W.3d 810, 815 (Tex. App.—Texarkana 2006, no pet.). "If the defendant offers an explanation for his or her possession of the stolen property, the record must demonstrate the account is false or unreasonable" for the possession to support an inference of guilt. *Middleton v. State*, 187 S.W.3d 134, 138-39 (Tex. App.—Texarkana 2006, no pet.). "Whether a defendant's explanation for possession of recently stolen property is true or reasonable is a question of fact to be resolved by the trier of fact." *Id.* at 139.

Although Davidson testified that he obtained the clothing in the car by purchasing the items at Goodwill earlier that day, the trial court was tasked with determining whether this explanation was credible and reasonable. *See id.* In making those determinations, the trial court was aided by Davidson's admissions at trial that he lied to the police multiple times about why

12

he was at the University and that he was familiar with and would hang around the laundry facility. *Cf. Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) (observing that inconsistent statements and implausible explanations to police are probative of wrongful conduct and are circumstances of guilt). The trial court was also aided by the testimonies from Wentz, McElwee, and McNeil all describing a white man wearing a t-shirt and gym shorts who was inside or near the laundry facility before they discovered that their clothing had disappeared from the laundry facility and by Wentz's testimony stating that the individual whom she saw inside the facility was the same person who was arrested during the traffic stop.

Based on the preceding, the trial court could have reasonably disbelieved Davidson's explanation for how he came to be in possession of underwear belonging to McElwee and McNeil that went missing approximately two weeks before he was arrested. *Cf. Middleton v. State*, No. 03-05-00187-CR, 2006 WL 3333670, at *3 (Tex. App.—Austin Apr. 18, 2006, pet. ref'd) (mem. op., not designated for publication) (affirming conviction where police found property stolen two weeks earlier in defendant's room). Moreover, both Kirschner and McElwee testified that neither of them knew Davidson nor gave him permission to take their clothing. Additionally, although Kirschner testified that she was unable to identify any of her stolen property in the photographs of the back seat of the white car, she explained that her clothing went missing after she used the same laundry facility that McElwee, McNeil, and Wentz used when their clothing disappeared and that she used the facility in the same general time frame as those other students. *See Heigelmann v. State*, 362 S.W.3d 763, 771 (Tex. App.—Texarkana 2012, pet. ref'd) (noting that evidence of other offenses occurring in proximity in time and place to charged offense can help to establish identity of offender); *King v. State*, 712 S.W.2d 799, 801

13

(Tex. App.—Houston [1st Dist.] 1986, pet. ref'd) (explaining that "the accused may be convicted of theft without being seen or found in the possession of stolen property").

Viewing the evidence in the light most favorable to the convictions and bearing in mind the reasonable inferences that the trial court was able to make from that evidence, we conclude that the evidence was sufficient to establish that Davidson committed theft by unlawfully appropriating clothing from McElwee and Kirschner without their effective consent and that he committed burglary of a building by intentionally or knowingly entering the laundry facility without the effective consent of the owner and committing those thefts. *See* Tex. Penal Code §§ 30.02(a), 31.03(a)-(b). Accordingly, we overrule Davidson's issue on appeal.

## CONCLUSION

Having overruled Davidson's issue on appeal, we affirm the trial court's judgments of conviction.

_____

Thomas J. Baker, Justice

Before Justices Baker, Triana, and Kelly

Affirmed

Filed: June 24, 2021

Do Not Publish

14